[No. F006118. Fifth Dist. May 7, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ELIBORIO HERNANDEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Christine Mason, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Appellant was charged by information in the Fresno County Superior Court with seven felony counts. Counts one and five charged violations of Penal Code section 288a, subdivision (c), forcible oral copulation.[1] Count two alleged a violation of section 289, subdivision (a), forcible penetration with a foreign object. Counts three and six alleged violations of section 261, subdivision (2), rape by force or fear. Counts four and seven charged violations of section 286, subdivision (c), sodomy by force or fear. It was further alleged in each count that appellant had kidnapped his victim (§§ 207, 667.8, subd. (a)). A prior serious felony conviction (rape, § 261) within the meaning of sections 667, subdivision (a), 667.6, subdivision (a) and 1192.7, subdivision (c)(3) was separately alleged.

A jury found appellant guilty of all counts, and further found each kidnapping allegation to be true. The court found the prior serious felony conviction allegation to be true.

At sentencing, having found appellant statutorily ineligible for probation (§ 1203.065), the trial court selected count four (sodomy by force or fear)

---

[1]All further references will be to the Penal Code unless otherwise noted.

as the principal term, giving appellant the middle term of six years, plus three years for the kidnapping enhancement and five years for the prior serious felony conviction, for a total of fourteen years. The court then imposed full consecutive sentences for count one (forcible oral copulation) and count three (rape by force or fear), each for nine years (the six-year middle term plus the three-year kidnapping enhancement). (§ 667.6, subd. (c).) On the remaining counts, the trial court imposed the middle term plus the kidnapping enhancement, and directed that the sentences be served concurrently to the sentence imposed for count one. Appellant's sentence thus totaled 32 years, less 232 days' credit.

### STATEMENT OF FACTS

At about midnight on February 14, 1985, victim Elise W. and her boyfriend, Regino Moreno, left the Fresno Mission. Uncertain where they would spend the night, Elise and Regino waited on the street in hopes of meeting a friend who could help them. Appellant drove by in a gray 1965 Chevrolet van with broken windshield, red interior and "mag" wheels. He nodded at Elise and Regino as he passed. Regino reciprocated, and appellant returned and parked the van in front of Elise and Regino. Regino told appellant that he and Elise had no place to spend the night and asked for help.

Appellant agreed to help and motioned for them to enter his van. Elise and Regino got in, Elise sitting between appellant and Regino. Appellant told Elise and Regino that they could stay at his brother-in-law's house and drove to a nearby house. Appellant parked in front of the house and told Regino to get out and knock at the front door of the house. Regino protested, stating that it was too late and that he did not know the people who lived there. After appellant assured him that there was no reason to worry, Regino exited the van and knocked on the front door.

While Regino waited for someone to answer the door, appellant started the motor of the van and drove off with the passenger door still open. Elise screamed, and appellant grabbed her hair and pulled her into a headlock, telling her not to move. Still holding onto Elise, appellant drove out of the city and stopped in a vineyard. Appellant told Elise, "I don't got 10 days more to live, you know, what the hell."

Appellant forced Elise to go to a bed in the back of the van. Appellant undressed, revealing a tattoo on his left shoulder. He then told her to take off her blouse and get on the bed. She complied because she was afraid. Appellant lay down on the bed and told Elise to suck his penis. Afraid of what appellant might do to her if she refused, she put her mouth on appellant's penis; however, she refused to continue when he ejaculated. Appellant

got off the bed and told Elise to lie down. Appellant had vaginal intercourse with Elise for about 30 minutes. Appellant inserted his fingers into her vagina for about two or three minutes. He then told Elise to get on the floor and placed his penis in her rectum. Before appellant completely inserted his penis into Elise's rectum, she protested, and he stopped. Appellant told Elise to get back on the bed and again inserted his penis into her vagina. The sexual intercourse continued for about 30 minutes. Appellant forced Elise to suck his fingers and his breasts. He sucked Elise's breasts and neck.

After appellant finished sexually abusing Elise, she attempted to leave the van to urinate; however, he grabbed her arm and forced her to urinate out the side of the van. He then forced her back to the bed and lay down. Elise asked appellant for a beer, and he gave her a can of "Budweiser" beer. Appellant said he had a gun behind the bed. Elise then drank a bottle of wine. Appellant and Elise both fell asleep.

When appellant awoke, he orally copulated Elise's vagina, had vaginal intercourse with her and sodomized her.

Appellant then dressed and dropped Elise off on the highway outside of Fresno. As appellant drove off, Elise wrote down the van's license plate number. She got a ride into Fresno and reported the sexual assaults to the police.

On March 26, 1985, Elise positively identified appellant from a photographic lineup. Although Regino did not identify appellant, he stated that the photograph of appellant resembled the perpetrator.

On May 9, 1985, Elise and Regino positively identified appellant at a live lineup.

DEFENSE

At trial, appellant denied raping the victim, denied knowing the victim and denied seeing the victim and Regino the night of the sexual assaults. He claimed that he was at his home in Reedley with his wife and children when the offenses occurred. His wife corroborated the alibi.

Appellant admitted that he had a tattoo of a bulldog with a knife on his left shoulder.

## DISCUSSION

I., II.\*

. . . . . . . . . . . . . . . . . . .

III. *Imposition of kidnapping enhancements.*

A. *Equal protection.*

Appellant received seven three-year enhancements under section 667.8. Four of these were to be served concurrent with the sentence on count four; consequently, appellant would actually serve nine years for his act of kidnapping.

█ Appellant points out that, had he been charged with and convicted of the substantive crime of kidnapping (§ 207), his sentence for that offense would have been stayed pursuant to section 654. (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 588-590 [187 Cal.Rptr. 515].) He contends that, since "[a] similarly-situated defendant . . . could not have been punished at all for the kidnapping offense," he has been deprived of equal protection of the law.

On point, and fatal to appellant's argument, is *United States* v. *Batchelder* (1979) 442 U.S. 114 [60 L.Ed.2d 755, 99 S.Ct. 2198]. There a criminal defendant's conduct had violated two overlapping federal criminal provisions, and he was charged and sentenced under the one authorizing the greater sentence. The court of appeals reversed, and the government appealed to the Supreme Court.

The court, per Justice Marshall, reversed the appellate court, reinstating Batchelder's sentence. In discussing the constitutionality of imposition of the greater sentence, the court observed that "[t]he provisions in issue here . . . unambiguously specify the activity proscribed and the penalties available upon conviction. . . . Although the statutes create. uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." (442 U.S. at p. 123 [60 L.Ed.2d at p. 764].)

Nor did the court find that the statutory structure gave the prosecutor

---

\*See footnote on page 1014, *ante.*

excessive latitude in making his charging decision. "This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. . . . Whether to prosecute and what charge to file . . . are decisions that generally rest in the prosecutor's discretion." (*Id.* at pp. 123-124 [60 L.Ed.2d at pp. 764-765].) "Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints. . . . [But] there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. . . . Just as a defendant has no constitutional right to elect which of two applicable . . . statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." (*Id.* at p. 125, fn. omitted [60 L.Ed.2d at pp. 765-766].) In a footnote the court observes that, as here, the defendant "does not allege that his prosecution was motivated by improper considerations." (*Id.* at p. 125, fn. 9 [60 L.Ed.2d at p. 765].)

Similarly, this court has followed *Batchelder* in holding that, where two enhancement statutes "overlap," no state or federal equal protection violation necessarily occurs when a defendant is charged with and sentenced under the more severe of the two statutes. (*People* v. *Wallace* (1985) 169 Cal.App.3d 406 [215 Cal.Rptr. 203].) "While the equal-protection clauses of the federal and state Constitutions may limit the prosecutor's exercise of discretion to preclude 'intentional and purposeful' invidious discrimination in the enforcement of penal laws (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 . . .), no such claim is made by defendant in the present case." (*Id.* at p. 411.)

In sum, it is clear that nothing in the statutory scheme or the charging decision violated appellant's equal protection rights.

B. *Multiple enhancements.*

■ Appellant next argues that, because only one act of kidnapping occurred, the trial court erred in imposing more than one section 667.8 enhancement.

He first contends that because section 1170.1 does not make explicit reference to section 667.8, no kidnapping enhancement may be imposed for any

of those counts (counts two, four, five, six and seven) for which sentence was imposed under section 1170.1.

At all relevant times, section 1170.1, subdivision (i) stated: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, *regardless of whether such enhancements are pursuant to this or some other section of law.* Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement." (Italics added.) Every count on which appellant was convicted falls into the class covered by subdivision (i). Thus, appellant's contention that enhancements under section 667.8 are not covered by section 1170.1 must fail.

■ Appellant does not address the question whether section 1170.1, subdivision (i) authorizes *multiple* section 667.8 enhancements. This is an important issue for resentencing. If the Legislature meant to permit only one enhancement for a "single-transaction" kidnapping, section 654 should preclude imposition of more than one enhancement. (See *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 817-819 [179 Cal.Rptr. 726].)

The language of section 667.8 is inconclusive. At the time of the proceedings below, section 667.8 provided: "Any person convicted of a felony violation of Section 261, 264.1, 286, 288, 288a or 289 who, for the purpose of committing such sexual offense, kidnapped the victim in violation of Section 207, shall be punished by an additional term of three years." (Stats. 1983, ch. 950, § 1, p. 3418.) Nothing in the statute indicates any legislative consideration of multiple kidnapping enhancements for multiple sexual offenses. (Cf. the language of § 667.8 to that of § 12022.3, which mandates an enhancement "[f]or *each violation* of Section 261, 264.1, 286, 288, 288a or 289" where the defendant was armed with or used a deadly weapon. (See *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71 [204 Cal.Rptr. 124].))

A survey of the legislative history of Senate Bill No. 859, the 1983 bill that enacted section 667.8, reveals that the original Senate version was indeed intended to permit multiple enhancements for a single act of kidnapping. (See Sen. Com. on Judiciary Rep. and Analysis of Sen. Bill No. 859 (1983-1984 Reg. Sess.).) However, the bill was modified by the Assembly on July 16, 1983, following a recommendation by the Assembly Committee on Criminal Law and Public Safety that only single enhancements be imposed. (See Assem. Com. on Crim. Law and Public Safety Rep. on Sen. Bill No. 859 (1983-1984 Reg. Sess.).) An August 29, 1983, analysis of the revision

by the Youth and Adult Correctional Agency observed: "Prior versions of the bill would have provided that any person who kidnaps and commits a specified sex offense would receive, in addition to the punishment for the sex offense (thereby forcing the sex offense to be the principal offense), a 5-year enhancement for *each* specified sex offense committed during the kidnapping, in lieu of the current kidnapping punishment of 3, 5 or 7 years in prison.

"As amended this bill would provide that any person convicted of any of the specified sex offenses who kidnapped the victim for the purpose of committing the sex offense, would be punished by an additional term of 3 years. This 3-year term would be added to the sentence irrespective of which offense was the principal offense."

If the Legislature did not intend multiple enhancements to arise from section 667.8, could it have intended that section 1170.1, subdivision (i) permits such multiple enhancements? We answer the question in the negative. As this court concluded in *People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 215 [206 Cal.Rptr. 563], the intent of subdivision (i) was to modify subdivisions (a) and (d): no more, no less. (See also *People* v. *Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1]: "The obvious purpose of subdivision (i) is to nullify certain limitations set forth in other parts of section 1170.1 regarding the number and length of enhancements that may be added to particular counts.") Subdivision (i) was plainly not intended to draw multiple enhancements from a statute intended to yield but one enhancement. We hold that only one kidnapping enhancement under section 667.8 should have been imposed below.

The judgment of conviction is affirmed; the matter, however, is remanded for resentencing for the reasons stated in parts II and III of this opinion.

Best, J., and Ballantyne, J., concurred.