[No. S001689. Aug. 4, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HERNANDEZ, Defendant and Appellant.

## COUNSEL

David L. Tucker, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William M. Wood, Robert M. Foster and Tim J. Nader, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARGUELLES, J.—** ■ This case requires us to resolve whether a sentencing judge may impose an additional three-year term under Penal Code section 667.8 (kidnapping for purposes of rape)[1] when violation of that section was not pled or proven and was mentioned for the first time in a probation report. We conclude that such additional term may not be imposed, since a pleading and proof requirement should be implied as a matter of statutory interpretation and must be implied as a matter of due process.

### FACTS

The offense in this case occurred on the night of September 6, 1985, in Big Pine, Inyo County, California. The victim, Marion M., had known defendant for about ten years and in the preceding year or two had been on intimate terms with him. He had fathered her youngest child.

By August 1985, however, the relationship had soured, and M., who had been living at defendant's residence, moved out and returned to her own home. Police logs reflect several contacts in the ensuing weeks for incidents in which M. claimed defendant had attacked or falsely imprisoned her. Often, however, she would not "press charges." She had even applied for and obtained a restraining order against defendant, only to forego its protection and seek joint counseling instead.

---

[1] All further references are to the Penal Code unless otherwise indicated.

Marion M. claimed that in August defendant frequently entered her home through a window and forced her to have sex. She had no telephone in the house, and a neighbor was either asked to call police or called in response to screaming and fighting at M.'s house.

On September 6, M. again went to court to obtain a restraining order and to settle child visitation rights. At the conclusion of the hearing, she thought she had obtained a restraining order prohibiting defendant from coming to her home except for weekly visits with their baby and only then if he was sober.

That evening, however, around 10 p.m., defendant arrived at M.'s house, knocked and entered without waiting for a response. He appeared to be intoxicated, staggered when he walked, and smelled of beer. Defendant first checked the bedrooms, apparently to be sure no other man was in the house. Then he sat next to M.; and after she asked him to leave, they began to argue. After 15 or 20 minutes, defendant began striking M. who had endured prior physical abuse and at first did not resist. One blow rendered her dizzy, however, and fearing for her life, she fought back, only provoking harsher blows.

After a time, defendant stopped, and M., to forestall further beatings, tried to calm him, hugged him, and reminded him that they had cared for each other. Defendant's response was to say they were going to the bedroom, words M. associated with his desire to engage in sex. He grabbed her by the wrist and headed for a back bedroom; however, when he briefly released her to turn off the light, she fled.

M. ran across the street to the home of a neighbor, some 153 feet from her front door; but despite her screams and banging on the door, no one responded.[2] Defendant ran after her, and perceiving that no one was answering the door, he seized M. and the two fell struggling to the ground. Finally defendant grabbed M. by the wrist and walked her back to the house.[3] Never letting go, he brought her to the baby's room and sat her down on a mat on the floor. He then engaged in forcible sexual intercourse, threatened to blow her up if she pressed charges, threatened to have some friends come in and have intercourse with her when he was done, and urinated on her.

---

[2] A baby-sitter and children were in the neighbor's house that night. When the baby-sitter heard the commotion, he simply turned off the lights and did not call police or otherwise get involved. When the incident seemed over, he returned to watching television.

[3] The question of whether, under the circumstances, this distance was substantial enough to satisfy the requirements of section 207 is not before us.

After a prolonged sexual assault, defendant fell asleep and M. decided to escape.[4] She put on some clothing, left the house, and drove to a nearby Chevron station where at about 1 a.m. September 7, she called police. Police met her at the station and found she was shaken, crying, and disheveled. Her nose was bloody, her lips were swollen, and she was bruised. She expressed fear that defendant was still in the house with her children. Police entered the house and found defendant naked and still asleep near the baby's crib. They also encountered the strong odor of alcohol and urine.

Defendant was charged by information with violation of: count I, section 261, subdivision (2) (forcible rape), count II, section 207, subdivision (a) (kidnapping), count III, section 273.5 (corporal injury on a cohabitant), count IV, section 245 (assault by means of force likely to produce great bodily injury), and count V, section 166, subdivision 4 (willful disobedience of court order). Additionally it was alleged with respect to counts I and II that defendant had served a prior prison term within the meaning of section 667.5, subdivision (b), and with respect to count I that the crime had occurred while defendant was on parole within the meaning of section 1203.085, subdivision (b). Violation of section 667.8 was not alleged.

The charges of contempt and injuring a cohabitant in counts III and V were dismissed pursuant to section 995,[5] however defendant was convicted of rape, assault, and kidnapping and both special allegations were found true. It was in the probation report that section 667.8 was first mentioned as an additional term to be applied in this case. At the sentencing hearing, defendant urged that imposition of a three-year enhancement under section 667.8, when violation of that section had not been pled and proven, would violate due process; but the prosecutor argued there was no requirement that the section be pled and proven and urged that, in any event, proving the crimes in this case proved the elements of the enhancement.

The trial court sentenced defendant to the middle term of six years for rape and added one year for the prior prison term and three years for violation of section 667.8.[6] The Court of Appeal affirmed, holding that

---

[4] M. feared that if she tried to take her three children with her, the noise would awaken defendant. She therefore left alone, after waiting several minutes to be sure defendant was completely asleep.

[5] There was doubt as to whether defendant and M. were cohabitants at the time of the assault and whether a formal restraining order had ever issued.

[6] No mention was made of terms for kidnapping or assault. Apparently the court felt "no punishment under section 654 can be imposed," but rather than pronouncing sentences and then staying their execution, it imposed no sentence whatsoever for those crimes. (See rule 449, Cal. Rules of Court; *People* v. *Masten* (1982) 137 Cal.App.3d 579, 590 [187 Cal.Rptr. 515]; *People* v. *Niles* (1964) 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11], discussing the proper procedure for staying sentence pursuant to § 654.)

section 667.8 did not have to be pled and proven and that in any event it involved no new fact not already an ingredient of the underlying offenses of kidnapping and rape. We disagree.

## DISCUSSION

### 1. *Language of Section 667.8*

The language of section 667.8, as it read at the time the crimes in this case were committed, did not of itself require that violation of the section be pled and proven before its additional term could be imposed. The section at that time simply provided: "Any person convicted of a felony violation of Section 261, 264.1, 286, 288, 288a or 289 who, for the purpose of committing such sexual offense, kidnapped the victim in violation of Section 207, shall be punished by an additional term of three years." (Stats. 1983, ch. 950, § 1, pp. 3418-3419.) Section 1170.1, subdivision (f), which requires that numerous enhancements be pled and proven, did not list section 667.8 among those enhancements. (Stats. 1982, ch. 1551, § 1.5, p. 6049.)

By the same token, however, section 667.8 did not make it clear that, in contrast to the numerous other sentence enhancements specifically required to be pled and proven, the Legislature intended that this enhancement would *not* have to be pled and found true by the trier of fact; and it is not unknown for an omission of the normal pleading and proof requirement to be inadvertent. (See, e.g., *People* v. *Jackson* (1985) 37 Cal.3d 826, 835, fn. 12 [210 Cal.Rptr. 623, 694 P.2d 736]; *People* v. *Najera* (1972) 8 Cal.3d 504, 509-510 [105 Cal.Rptr. 345, 503 P.2d 1353].) The statute's failure to address the pleading and proof question distinguishes section 667.8 in an important way from the statute in *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79 [91 L.Ed.2d 67, 106 S.Ct. 2411], relied on in this case by the Court of Appeal and the People.

*McMillan* involved a Pennsylvania statute that provided anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found that the person "visibly possessed a firearm" during the commission of the offense. (*McMillan, supra,* 477 U.S. at p. 81 [91 L.Ed.2d at p. 73].) The statute explicitly stated: " 'Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. . . .' " (*Id.* at p. 81, fn. 1 [91 L.Ed.2d at p. 73].)

■ Section 667.8's failure to mention a pleading-and-proof requirement or to specifically structure a procedure for notice and hearing on the new factor as was done in *McMillan* creates an ambiguity inviting inquiry into the Legislature's intent in enacting this statute. (See *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].)

*2. Development and Importance of the Requirement That Kidnapping Be "for the Purpose of" a Listed Sex Offense*

■ As noted above, the Court of Appeal in this case held that section 667.8 did not require proof of any new fact not already established by defendant's conviction for rape and kidnapping. It suggested that section 667.8 describes a mere "motive" that could be ascertained by the trial court at the time of sentencing and need not be pled and proven before the trier of fact. Choosing to call the mental element of section 667.8 a "motive" perhaps draws upon the general rule that motive is not ordinarily an element of a crime and hence need not be proved by the prosecution even though it is often relevant and involves admissible evidence. (1 Witkin, Cal. Crimes (1963) § 54, pp. 59-60; see *People* v. *Beagle* (1972) 6 Cal.3d 441, 450 [99 Cal.Rptr. 313, 492 P.2d 1].) The reference to mere motive, however, downgrades the importance of the mental element required by section 667.8 and would be inconsistent with the construction given to similar language in other penal statutes.

■ Statutes must be construed with reference to the system of laws of which they are a part. (*In re Michael G.* (1988) 44 Cal.3d 283, 296 [243 Cal.Rptr. 224, 747 P.2d 1152].) Further, in enacting a statute such as section 667.8, the Legislature is deemed to be aware of statutes and judicial decisions already in effect and to have enacted the new statute in light thereof. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].)

Numerous penal statutes describe a specific mens rea by defining certain prohibited conduct done "for the purpose of" achieving some further end. (See, e.g., § 207, subds. (b), (c) [kidnapping a child for the purpose of violating § 288; taking a person out of state for the purpose of selling him into slavery]; § 210 [posing as kidnapper for the purpose of extortion]; § 210.5 [false imprisonment for purposes of avoiding arrest or using victim as shield]; § 243.4 [battery on restrained or institutionalized person for the purpose of sexual gratification]; § 266 [enticing a girl into house of ill fame for the purpose of prostitution]; § 266a [forcible abduction for the purpose of prostitution]; § 289 [forcible penetration of genital or anal opening with foreign object for the purpose of sexual gratification]; § 303 [employing someone for the purpose of having them procure increased purchase of

alcoholic beverages]; § 337a [occupying premises or possessing paraphernalia for purposes of bookmaking]; § 482 [altering cancelled tickets for the purpose of restoring original value]; § 484g [using stolen credit card for the purpose of obtaining money, goods or services]; § 780 [leaving the state for the purpose of dueling]; § 12022.4 [furnishing a firearm for the purpose of aiding in a felony]; § 12022.75 [forcibly administering drug for purposes of committing a felony]; and see § 209 [kidnapping to commit robbery, commonly called kidnapping for purposes of robbery; see *People* v. *Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]].)

■ While specific and general intent are sometimes difficult to define, we noted in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370] that: "When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*Id.* at p. 457.) There is no reason why this same principle should not apply to enhancements which require an intent to do some further act or achieve some additional goal. ■ Where a statute specifically requires that an act or offense be done "for the purpose of" achieving a further goal, we are no longer dealing with mere motive, a useful but optional aspect of the crime. We are dealing with a required, specific mental state.

Prior versions of the bill resulting in section 667.8 are also helpful in determining that its requirement that kidnapping be for the purpose of committing a sex offense was definitely not a case of casual phraseology. As originally introduced, the section would have provided: "In lieu of the term provided in Section 1170.1, where a person is convicted of a violation of Section 261, 264.1, 286, 288, 288a, or 289, *which violation occurred during* a kidnapping as defined in Section 207 or an attempt to kidnap for which that person is convicted, that person shall be sentenced to the full term which would be imposed for the violation or violations of Section 261, 264.2, [*sic*] 286, 288, 288a or 289 plus an additional full, separate, and consecutive term of five years." (Sen. Bill No. 859 (1983-1984 Reg. Sess.) § 1 [hereafter Sen. Bill No. 859], introduced Mar. 2, 1983 (italics added).)[7]

As first amended, the statute would have provided: "Notwithstanding Section 654 or any other provision of law, and in lieu of the term provided

---

[7] The bill, requested by the Los Angeles district attorney's office and supported by the California Peace Officers' Association, drew prompt opposition from various public defender groups including the State Public Defender and California Attorneys for Criminal Justice. (See, e.g., Letters to State Sen. Diane Watson from the Cal. Peace Officers' Assn. dated Mar. 31, 1983, from the office of the State Public Defender dated Apr. 8, 1983, and from the Cal. Attys. for Crim. Justice dated Apr. 11, 1983; and see Sen. Com. on Judiciary, Rep. Analysis of Sen. Bill No. 859, as introduced.)

in Section 1170.1, every person convicted of a felony violation of Section 261, 264.1, 286, 288a, or 289, *which occurred during* a kidnapping as defined in Section 207 or an attempt to kidnap for which that person is also convicted, shall receive a five-year enhancement for each sex offense conviction in addition to the sentence imposed for that conviction." (Sen. Bill No. 859, as amended in Sen. Apr. 18, 1983.) A final amendment to the bill in the Assembly brought it to its present form. (Sen. Bill No. 859, as amended in Assem. July 16, 1983.)

These changes indicate that the additional term to be imposed under section 667.8 was originally designed to eliminate the partial sentence reduction that might be gained by application of the standard consecutive sentence formula of section 1170.1 (if the kidnapping and the sex offense were divisible for purposes of sentencing) or the prohibition against multiple punishment contained in section 654 (if the kidnapping and sex offense were part of one indivisible course of conduct). (See, e.g., *People* v. *Flores* (1987) 193 Cal.App.3d 915, 922 [238 Cal.Rptr. 656].) The rigor of the original versions of the bill, however, with a five-year enhancement applicable even where there was only an attempted kidnapping and arguably applicable to each sex offense committed on a particular occasion, was lessened by later amendments. The statute as eventually enacted specified three years, a completed kidnapping, and one application of the enhancement per incident. (*People* v. *Hernandez* (1987) 191 Cal.App.3d 1014, 1022 [236 Cal.Rptr. 728]; *People* v. *White* (1987) 188 Cal.App.3d 1128, 1138 [233 Cal.Rptr. 772].)

The mental state required for imposition of the enhancement was also changed in the version of the bill enacted into law and was intentionally limited to a section 654 situation in which kidnapping would be considered incidental to accomplishment of the rape. (See Assem. Com. on Crim. Law Pub. Saf., Rep. Analysis on Sen. Bill No. 859 as amended Apr. 18, 1983, p. 2.) While earlier versions required only that the sex crime occur during a kidnapping, the final form of the bill required that the kidnapping be for the purpose of committing one of the specified sex offenses. That change coming when it did, in conjunction with lessening the time imposed for the enhancement, narrowing the kidnappings to which it applied, and limiting its application where multiple sex crimes occur on one occasion, establishes that "for the purpose of" was not a synonym for a violation which merely occurred during a kidnapping and might or might not be divisible from it for sentencing purposes. Instead, some showing would have to be made that

the perpetrator at the time of the kidnapping had the specific intent to commit one of the listed sex offenses.[9]

We therefore conclude that section 667.8 must be read to require not just a motive but a specific mental state which must be found to exist before the enhanced term may be imposed. Certainly it involves a new fact not established merely by defendant's conviction for rape and kidnapping.

### 3. *Section 667.8 as a Sentencing Fact*

■ Accepting to some extent that section 667.8 involves a new fact not necessarily included in the elements of kidnapping and the specified sex offenses, the People argue that section 667.8 did not have to be pled and proven since kidnapping being "for the purpose of" rape was a "sentencing fact," similar to the various factors set forth in rule 421(a), California Rules of Court. Rule 421(a) specifies which facts relating to a crime may be considered circumstances in aggravation justifying imposition of an upper term or consecutive sentencing. (See also rule 425(b), Cal. Rules of Court.) Relying on this analogy and the recent Court of Appeal decision in *In re Samuel B.* (1986) 184 Cal.App.3d 1100 [229 Cal.Rptr. 378], the People argue that the fact a kidnapping was for the purpose of rape is a sentencing consideration for the judge, not something that must be found by the jury.

The decision in *Samuel B.* supports the People's position. It concluded the fact that the kidnapping had to be for the purpose of a specified sex offense was a mere "sentencing fact" that was considered after conviction and was directly related to the trial court's sentencing decision under section 654.[10] If the trial court found kidnapping was for purposes of the sex offense, then section 654 precluded imposition of sentence on both kidnap-

---

[9]Section 667.8 was subsequently amended as part of the Davis-Grisham Missing Children Act of 1986 to add a subdivision (b) which now provides: "Any person convicted of a felony violation of subdivision (c) of Section 286, Section 288, or subdivision (c) of Section 288a who, for the purpose of committing that sexual offense, kidnapped the victim, who was under the age of 14 years at the time of the offense, in violation of Section 207, shall be punished by an additional term of nine years. This subdivision is not applicable to conduct proscribed by Section 277, 278, or 278.5." (Stats. 1986, ch. 249, § 8, No. 3 Deering's Adv. Legis. Service, p. 302.) It is noteworthy that while the term to be added is dramatically increased, the limitation that it be shown the kidnapping was for the purpose of committing one of the specified sex offenses remains. The 1986 act was effective as urgency legislation on September 3, 1986. (Stats. 1986, ch. 249, § 17, No. 3 Deering's Adv. Legis. Service, p. 305; Cal. Const. art. IV, § 8, subd. (d).)

[10]*Samuel B.* also noted that nothing in the language of section 667.8 as it existed at that time or in section 1170.1, subdivision (f) required that violation of section 667.8 be pled or proven. As did the Court of Appeal in our case, *Samuel B.* insisted no new fact had to be shown beyond those established by defendant's conviction of kidnapping and the pertinent sex offense. (*Samuel B., supra,* 184 Cal.App.3d at pp. 1106-1107.)

ping and the sex crime, but section 667.8 would add three years. If the sentencing judge determined that the kidnapping was not for purposes of the sex offense, section 667.8 would not add three years, but section 654 also would not apply and consecutive sentencing on the kidnapping and sex crime might be available. (*Samuel B., supra,* 184 Cal.App.3d at p. 1108.) Relying on the recent United States Supreme Court decision in *McMillan, supra,* 477 U.S. 79, the court in *Samuel B.* concluded that section 667.8 just "ups the ante" for the defendant and presents no due process problem. (*Samuel B., supra,* 184 Cal.App.3d at p. 1107.)

This reasoning is flawed. *Samuel B.* fails to distinguish a trial court's decision in fashioning appropriate punishment from the need to establish before the trier of fact the wrongful criminal conduct for which punishment is being imposed. "Sentencing facts" such as aggravating and mitigating circumstances assist a judge in selecting from among the options of punishment the trier of fact's verdict has made available. They help the court select, for example, the higher, middle or lower term and whether terms should be consecutive or concurrent. Such factors are largely the articulation of considerations sentencing judges have always used in making these decisions.

Whether sentences should be stayed pursuant to section 654 is also a decision on what terms can be imposed from among those available based on the conviction offenses and the enhancements found true. (See, e.g., *People* v. *Pearson* (1986) 42 Cal.3d 351, 359 [228 Cal.Rptr. 509, 721 P.2d 595] [reiterating that § 654 bars multiple punishment, not multiple conviction]; *People* v. *Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569] [reaffirming that § 654 applies to enhancements].) However, the fact that section 667.8 was in part a response to possible sentencing limitations under section 654 does not mean its imposition is determined exclusively by the sentencing judge and at the same time section 654 is applied.

In the present case, the jury's verdict simply did not make the three-year term of section 667.8 available to the sentencing judge to impose as a counter to section 654. It was not one of the available punishments the court could impose as part of the sentencing package because the section's essential requirement, that the kidnapping must have been perpetrated for the purpose of committing one of the specified sex offenses, had not been established by the trier of fact.

As for the *McMillan* decision, clearly that case is distinguishable from our own. As noted above, the statute in *McMillan* specifically provided that notice of the mandatory minimum sentence need not be given prior to

conviction. By contrast, our statute was silent on the pleading and proof problem. Further the statute in *McMillan* was part of an indeterminate sentencing scheme. (See, e.g., description of sentences imposed in *McMillan, supra,* 477 U.S. at p. 82, fn. 2 [91 L.Ed.2d at p. 74].)[11] Section 667.8, however, is part of a determinate sentencing system the inevitable pattern of which is to require additional terms to be imposed only after the enhancement has been found true by the trier of fact. (See §§ 1170.1, subd. (f), and 667.10, subd. (b), 12022.1, subd. (c), 12022.4, 12022.6, 12022.9.)[12]

*McMillan* noted that the statute in that case "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty *within the range already available to it without the special finding of visible possession of a firearm*." (*McMillan, supra,* 477 U.S. at pp. 87-88 [91 L.Ed.2d at p. 77] [italics added].)[13] *McMillan* also found that the Pennsylvania scheme just took one factor that had already been considered by sentencing courts and dictated the precise weight it should be given in sentencing. (*McMillan, supra,* 477 U.S. at pp. 89-90 [91 L.Ed.2d at pp. 78-79].)

Again, in our case imposition of section 667.8 *increases* the range available to the court. And we cannot say that the fact that a kidnapping was for the purpose of rape is one of the traditional facts of a crime or of a defendant's criminal history usually taken into account by sentencing judges. *McMillan* reaffirmed the fact that states may formulate different statutory schemes to punish criminal offenders. (*McMillan, supra,* 477 U.S. at p. 90 [91 L.Ed.2d at p. 79].) Nothing in that decision suggests that in our sentencing scheme section 667.8 should be read as a mere sentencing factor rather than a finding which must be pled and proven before the trier of fact.[14]

---

[11] We are familiar from our own prior indeterminate sentencing law with some of the problems in trying to increase punishment by setting higher minimum terms or release dates. (See, e.g., *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073].)

[12] While it could be argued that enacting section 667.8 without a pleading-and-proof requirement should be deemed intentional in light of this general statutory scheme, such argument is substantially diminished by the Legislature's prompt response to *Samuel B., supra,* 184 Cal.App.3d 1100. *Samuel B.* was decided in August 1986. On March 4, 1987, Assembly Bill No. 1578 was introduced and was subsequently enacted adding section 667.8 to the list of enhancements in section 1170.1, subdivision (f) which must be pled and proven. (Stats. 1987, ch. 1423, § 3.7, No. 5 Deering's Adv. Legis. Service, p. 5430.) This again suggests the initial failure to include a specific pleading-and-proof requirement was an inadvertent, not intentional, omission.

[13] Compare *Specht* v. *Patterson* (1967) 386 U.S. 605, 607 [18 L.Ed.2d 326, 328-329, 87 S.Ct. 1209] where a new finding which was not an ingredient of the offense charged (to wit: whether the defendant constituted a threat of bodily harm to the public) increased maximum confinement potentially to life. Notice and other due process protections were required. (*Id.* at p. 610 [18 L.Ed.2d at p. 330].)

[14] To the extent it is inconsistent with this opinion, *In re Samuel B., supra,* 184 Cal.App.3d 1100 is accordingly disapproved.

### 4. *Section 667.8 as a Substantive Offense*

■ The foregoing considerations lead us to conclude that failure to include section 667.8 among those enhancements listed in section 1170.1, subdivision (f) as requiring pleading and proof was an oversight, one the Legislature has already acted to correct. (See *ante*, fn. 12.) Defendant, however, has not just debated whether section 667.8 involves a sentencing fact or an enhancement which must be pled and proven. He also argues that section 667.8 is not really an enhancement at all but a substantive offense. He asserts that since the section requires proof of an additional element and imposes a separate term of imprisonment, it actually defines a separate crime. He then concludes that since one may not be convicted of a crime that is neither charged nor necessarily included in a charged offense (*People v. Lohbauer* (1981) 29 Cal.3d 364, 368 [173 Cal.Rptr. 453, 627 P.2d 183]), punishment under section 667.8 cannot be imposed in his case.

■ While we agree that the three-year term may not be added to defendant's sentence, it is certainly not because section 667.8 defines a separate substantive offense. As defined in the Rules of Court, an enhancement "means an additional term of imprisonment added to the base term." (Rule 405(c), Cal. Rules of Court; and see generally Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 22-24.) We are not dealing in this case with the level of felony that would garner the old year-and-a-day sentence on the one hand (see, e.g., § 270, now referring to a determinate term of one year and one day) or death or life imprisonment on the other. Hence, base terms for offenses such as those committed by defendant involve, after passage of the Determinate Sentencing Act, a choice among three possible terms prescribed by statute. (§ 1170, subd. (a)(2); rule 405(b), Cal. Rules of Court.) Section 667.8's provision for a single three-year term, then, of itself suggests the section is not a separate offense. Its language referring to "an additional term" of three years is likewise consistent with other enhancement statutes. (And see *People v. Best* (1983) 143 Cal.App.3d 232, 236-237 [191 Cal.Rptr. 614].)[15]

The fact that section 667.8 includes an element in addition to those necessary to prove a violation of section 207 or the sex crimes specified, certainly does not imply it has defined a new crime. Enhancements typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators

---

[15] While no magic words need be used to identify an enhancement, we note that many enhancement statutes in fact use the word "enhancement" (see, e.g., §§ 667, subd. (a), 667.5, 667.51, 12022.3, 12022.8), while others refer to imposition of an "additional term." (See, e.g., §§ 667.8, 667.85, 12022, 12022.2, 12022.4, 12022.5, 12022.55, 12022.7, 12022.75, 12022.9.)

and which justifies a higher penalty than that prescribed for the offenses themselves. That is one of the very purposes of an enhancement's existence.

Interesting questions as to whether one is dealing with a substantive crime or an enhancement have arisen in situations the reverse of our own, where a substantive offense is so worded that a casual reading may raise doubts as to whether a separate crime is really being defined. Typically, focus not just on the additional element added by the statute but on its specification of three possible terms from which the base term may be chosen resolves identification of the statute as a substantive offense or an enhancement. (See, e.g., *People* v. *Lozano* (1987) 192 Cal.App.3d 618, 629-633 [237 Cal.Rptr. 612] [escape by force and violence]; *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 621 [233 Cal.Rptr. 645] [rape in concert]; *People* v. *Beller* (1985) 172 Cal.App.3d 904, 910-912 [218 Cal.Rptr. 488] [robbery in an inhabited dwelling]; *People* v. *Best, supra,* 143 Cal.App.3d 232, 235-238 [rape in concert].) Here reference to the wording of the statute and its specification of one term leaves no doubt that an enhancement rather than a substantive crime is involved.

## 5. *Avoiding Due Process Problems*

■ Interpreting section 667.8 to require pleading and proof of its specific mental state before its additional three-year term may be imposed will also avoid constitutional problems. As we recently reiterated, due process requires that an accused be advised of the specific charges against him so that he may adequately prepare his defense. (*People* v. *Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419].) An enhanced term cannot be imposed without proof of each fact it requires. (*Jackson, supra,* 37 Cal.3d at p. 835 [§ 667]; *Najera, supra,* 8 Cal.3d at pp. 509-510 [§ 12022.5].)

In the present case, as noted above, no notice whatsoever, not just of the code section but of the mens rea required by section 667.8, was given either in the information, arguments of counsel, or evidence produced at trial. Mention that a three-year additional term would be added for kidnapping for the purpose of rape was first made in the probation report filed ten days before sentencing. As a matter of due process, the enhancement under section 667.8 could not be imposed under these circumstances. (See *Lohbauer, supra,* 29 Cal.3d at pp. 369-370.)

The People, however, urge that the facts overwhelmingly establish that this kidnapping was for the purpose of rape. They argue the jury must have so concluded, and any error in failing to plead, prove, or instruct on section 667.8 was therefore harmless. It is unnecessary to articulate a particular

standard of review and engage in a harmless-error analysis when defendant's due process right to notice has been so completely violated. ██ Even if we were to engage in such analysis, however, we would have to conclude defendant was prejudiced under any standard.

Just through the testimony of the victim, substantial evidence was presented that defendant was intoxicated on the night of the crime. Marion M. testified that defendant staggered when he entered her house that night, smelled strongly of beer, had difficulty in completing the sex acts, and passed out after the prolonged sexual assault. Officers responding to the scene were met with the odor of urine and of alcohol when they found defendant naked and asleep on the floor of the bedroom.

Section 22, subdivision (b), provides: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (See also *People* v. *Hood* (1969) 1 Cal.3d 444, 457 [82 Cal.Rptr. 618, 462 P.2d 370].) Voluntary intoxication is not a defense to general intent crimes. (See *People* v. *Kelly* (1973) 10 Cal.3d 565, 575 [111 Cal.Rptr. 171, 516 P.2d 875]; *People* v. *Rocha* (1971) 3 Cal.3d 893, 896-900 [92 Cal.Rptr. 172, 479 P.2d 372].) All of the substantive offenses for which defendant was tried were general intent crimes. (§ 245, *Rocha, supra*; § 207, *Thornton, supra,* 11 Cal.3d at p. 765; § 261, *People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1140 [222 Cal.Rptr. 630].)

It is possible that defendant failed to testify or otherwise put on additional evidence as to his degree of intoxication and precise mental state at the time of the crimes because he believed, and rightly so, that voluntary intoxication was not a defense to the charges he faced.[16] He did not know he faced a charge, the section 667.8 enhancement, which required proof of a specific mental state; and from the prosecution's failure to plead section 667.8 he could reasonably assume the prosecution had chosen not to pursue it. (Cf. *Najera, supra,* 8 Cal.3d at pp. 511-512.)

By the same token we may not conclude, as the Court of Appeal would have us do, that the jury impliedly found true the elements of section 667.8. The jury was given CALJIC No. 9.20 (1979 rev.) which instructed it to determine whether the movement of the victim was "in connection with the commission or attempted commission of the crime of rape."[17] While evi-

---

[16] Certainly the jury was instructed that defendant's offenses were general intent crimes and that voluntary intoxication was not a defense. (See fn. 19, *post.*)

[17] The instruction as given in this case provided: "Defendant is charged in Count II of the information, with the commission of the crime of kidnaping, a violation of Section 207 of the Penal Code.

dence of violation of section 667.8, unaffected by any defense defendant may have presented on the issue, is indeed strong, the victim also stated that when defendant seized her at her neighbor's door and dragged her back across the street, she feared being beaten. Indeed she testified to defendant's making comments at the time which she associated with past beatings. Thus since "in connection with" could simply mean temporal proximity, the jury could have found defendant's purpose in kidnapping the victim was to beat her in retaliation for her refusing to engage in sexual conduct, even though the seizure was followed thereafter by a sexual assault.[18]

It is true, as we have recently held, that misinstruction on an element of an offense or special circumstance may be subject to a harmless error analysis under the standard of *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See, e.g., *People* v. *Odle* (1988) 45 Cal.3d 386, 412-415 [247 Cal.Rptr. 137, 754 P.2d 184] [knowledge that victim was a peace officer, special circumstance]; *People* v. *Dyer* (1988) 45 Cal.3d 26, 63-64 [246 Cal.Rptr. 209, 753 P.2d 1], [*Beeman* error (*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318])]; *People* v. *Lee* (1987) 43 Cal.3d 666, 673-676 [238 Cal.Rptr. 406, 738 P.2d 752] [implied malice/attempted murder].) The same might be said of misinstruction on an element of an enhancement. One must distinguish misinstruction, however, from the situation in which the issue of intent is removed from the jury's consideration. (See *Rose* v. *Clark* (1986) 478 U.S. 570, 580-581 [92 L.Ed.2d 460, 106 S.Ct. 3101, 3107-3108].)

In the present case, given the general language of the kidnapping instruction and the fact that defendant appeared to be charged solely with general

---

"Every person who, *in connection with* the commission or attempted commission of the crime of rape unlawfully and with physical force moves any other person against her will and without her consent or unlawfully compels any other person, against her will and without her consent and because of a reasonable apprehension of harm, to move for a substantial distance, that is, a distance more than slight or trivial, is guilty of the crime of kidnaping.

"In order to prove the commission of the crime of kidnaping, each of the following elements must be proved:

1. That a person was unlawfully moved by the use of physical force or was compelled to move because of a reasonable apprehension of harm,

2. That the movement of such person was *in connection with* the commission or attempted commission of the crime of rape,

3. That the movement of such person was against her will and without her consent, and

4. That the movement of such person was for a substantial distance, that is, a distance more than slight or trivial.

"Whether the movement potentially increases the danger to the complaining witness is not a factor in determining whether that movement was substantial in character." (Italics added.)

[18] We note that CALJIC No. 9.20 which was read to this jury has been withdrawn. (See Use Note to CALJIC No. 9.20 (4th ed. 1987 pocket pt.); and see *People* v. *Stanworth* (1974) 11 Cal.3d 588, 601 [114 Cal.Rptr. 250, 522 P.2d 1058], indicating that kidnapping under § 207 need not occur "in connection with" any other crime.)

intent crimes, the parties would surely have been unaware that a specific mental state was involved, and the trial court's instruction on voluntary intoxication[19] effectively removed the issue of that specific intent from the jury. (Compare *People* v. *White, supra,* 188 Cal.App.3d 1128, 1131, fn. 1, 1138-1139.)[20] We therefore conclude that, however convincing the evidence of defendant's purpose in kidnapping Marion M., error in failing to give notice to the defendant that his mental state was at issue or any instruction requiring that the jury find the crucial fact cannot be deemed harmless. (See also *People* v. *Figueroa* (1986) 41 Cal.3d 714, 724 [224 Cal.Rptr. 719, 715 P.2d 680].)

## DISPOSITION

Judgment of the Court of Appeal is reversed with directions to remand to the trial court for resentencing consistent with this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.

---

[19] The jury was instructed: "Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.'

"In the offenses charged in the Information, the fact the defendant was voluntarily intoxicated is not a defense and does not relieve him of responsibility for the crime." (See also CALJIC No. 4.20 (1979 rev.).)

[20] In *White,* section 667.8 was charged in the information and the jury was told the People's burden of proving its case beyond a reasonable doubt included proving a special allegation that kidnapping was for the purpose of committing the charged crimes. The jury was not, however, specifically required to find defendant committed the crime for purposes of kidnapping. The error was properly found harmless.