[No. E020833. Fourth Dist., Div. Two. Feb. 23, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES HENRY MATTHEWS, Defendant and Appellant.

**COUNSEL**

Robert J. Russo, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura W. Halgren and Frederick B. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WARD, J.**—Defendant and appellant Charles Henry Matthews appeals after he was convicted of one felony count of removing or taking a firearm from a peace officer while resisting arrest (Pen. Code, § 148, subd. (c)), and one felony count of being an ex-felon in possession of a firearm (Pen. Code, § 12021.1). The court also found true an allegation that defendant had suffered one serious prior felony conviction within the meaning of the three strikes law (Pen. Code, § 667, subds. (c)-(e)), and sentenced defendant to the middle term of two years on count I (taking or removing a firearm), doubled to four years pursuant to the three strikes law, plus a concurrent sentence of one year four months on count II (ex-felon in possession of a firearm). Defendant appeals, contending the evidence was not sufficient to support his conviction in count I, of removing or taking a firearm from a peace officer. He also argues the trial court's instructions as to the removing/taking offense were inadequate and confusing, and that the court failed to respond appropriately to a jury request for further instruction on that count.

We agree that the evidence was insufficient to sustain the conviction of taking or removing the officer's weapon, and we reverse as to that count.[1]

### FACTS AND PROCEDURAL HISTORY

Deputy Drexler and Deputy Acevedo of the Riverside County Sheriff's Department responded to a report of suspicious persons near Haines and Hicks Streets in Mead Valley. When the deputies arrived at that intersection, they saw two men standing near the corner.

Deputy Drexler was a new patrol officer; Deputy Acevedo was his training officer. Deputy Acevedo turned on the rearward emergency lights of their marked patrol vehicle, and turned the front spotlight on the two men. It was 10:15 p.m., and quite dark, as the area had few streetlights. As the two deputies alighted from their patrol vehicle, one of the men, Eddie Brown, raised his hands. Brown held a large knife in one hand. Defendant appeared to drop something from his left hand and started walking north, toward the patrol car.

Deputy Drexler focused his attention on Brown, who had the knife. Deputy Acevedo concentrated on defendant. Eventually, Brown dropped the knife and Deputy Drexler was able to handcuff him.

In the meantime, Deputy Acevedo had yelled to defendant to stop and to put his hands in the air. Defendant ignored Deputy Acevedo's commands

---

[1]Defendant addresses no contentions to his conviction of being an ex-felon in possession of a firearm. The validity of that conviction is not before us on appeal.

and continued walking approximately north, to pass by the driver's side of the patrol car. Deputy Acevedo had his flashlight out, shining it on defendant. Deputy Acevedo then attempted to grab defendant's jacket on defendant's left rear side. Defendant evaded Deputy Acevedo's grasp, pulling away and crouching down. Defendant put his right hand to his waistband and sidled away from Deputy Acevedo, keeping his left side to Deputy Acevedo,[2] and his right side away from Deputy Acevedo's view.

As defendant was passing the rear of the patrol car, Deputy Acevedo attempted to spray defendant with pepper spray, but he did not know whether the spray actually touched defendant.

Deputy Acevedo drew his service revolver and aimed it at defendant, because he could not see defendant's hand at his waistband. Defendant moved away, sidestepping, toward the driveway of a residence on Hicks Street. Deputy Acevedo followed, still shining his flashlight and pointing his gun at defendant. In the middle of the driveway, Deputy Acevedo again attempted to grab defendant's jacket. Defendant was yelling for the people in the house to come out, that the sheriffs were after him. Then, Deputy Acevedo testified, while "I actually had my gun aimed right at him telling him not to move, . . . he just ran right at me." Defendant slammed into Deputy Acevedo; the impact knocked Deputy Acevedo's gun out of his hands. Defendant did not reach for Deputy Acevedo's gun or knock it out of Deputy Acevedo's grasp with his hands; defendant also did not attempt to pick up the weapon after it fell. Deputy Acevedo testified that, "He ran into me. That knocked it out of my hand."

Next, Deputy Acevedo struck defendant twice in the face with his fist, hard enough so that defendant fell to the ground. Deputy Acevedo saw defendant drop something when he hit defendant. Defendant did not stay down, but tried to get up. Deputy Acevedo kicked defendant's legs to prevent defendant from arising; he did so three or four times, as defendant continued to try to get up. On one of these occasions, as defendant was falling to the ground, Deputy Acevedo retrieved his weapon.

Defendant refused to display his right hand and still had it tucked under his body. Eventually, Deputy Drexler came to Deputy Acevedo's assistance to pull defendant's right hand out and help handcuff defendant.

In the area where the deputies first saw the two men, and where defendant had apparently dropped something from his left hand, the deputies found a

---

[2]Defendant is missing the outer portion of his left ear. He is also deaf in the left ear. His left side was toward Deputy Acevedo as defendant attempted to walk past the patrol car.

pipe for smoking rock cocaine. After the deputies had finally subdued both Brown and defendant, Deputy Acevedo looked on the ground near the location where he had struck defendant in the face and had seen defendant drop something. He found a loaded gun.

Deputy Drexler had never seen defendant with a gun at all, and only saw the gun on the ground after Deputy Acevedo pointed it out. Neither deputy had actually seen defendant with a gun in his hand.

Defendant testified in his own behalf that he did not know Deputy Drexler and Deputy Acevedo were law enforcement officers. When their vehicle appeared, he was blinded by the vehicle's lights. Defendant thought the occupants of the vehicle might be "gangbangers," and he tried to walk away.

Defendant also testified that he is deaf in his left ear. He heard someone say, "hold it," and then he was squirted with pepper spray. The spray burned and defendant could not see.

Deputy Acevedo had grabbed defendant's jacket and was trying to swing defendant around to face him. Defendant believed Deputy Acevedo wanted defendant to face him so that he could shoot defendant, rather than shooting him in the back. Defendant called for the people living in the trailer on the property to come out, and he tried to turn his back toward Deputy Acevedo, on the theory that Deputy Acevedo would be reluctant to shoot him in the back in front of witnesses.

While Deputy Acevedo had a hold on defendant's jacket and was attempting to swing defendant around, the deputy dropped his gun. Defendant denied charging at Deputy Acevedo. Defendant was hunched over because Deputy Acevedo had kicked him in the groin. Defendant did not hit Deputy Acevedo or swing his fists at him; he never tried to grab the deputy's gun or try to knock it away. Defendant claimed he did nothing to cause Deputy Acevedo to drop his gun except to struggle to get away, and he tried to slip out of the deputy's grasp because he feared the deputy would kill him. Deputy Acevedo was holding his flashlight, his pepper spray, his gun, and defendant's jacket when the weapon fell.

Defendant was charged by an amended information with removing and taking a firearm from a peace officer while resisting arrest, a felony, in violation of Penal Code section 148, subdivision (c). In a second felony count, defendant was charged with being an ex-felon in possession of a

firearm. The amended information alleged defendant had suffered one prior serious felony conviction, a conviction for murder in 1959.[3]

The case was tried to the jury, except that the prior conviction allegation was bifurcated and tried to the court.

After the jury retired to deliberate, it returned approximately an hour later with questions concerning count I, taking and removing the weapon from Deputy Acevedo. The jury asked, "[]Does [']removed or took a firearm from the person or immediate presence of the peace officer' mean the same as causing him to drop it?" The court conferred with counsel and, in response to the jury's question, reiterated one of the instructions already given. The court reinstructed the jury, pursuant to CALJIC No. 3.40, that "To constitute the crime of [Penal Code section] 148 (c), there must be, in addition to the disarming of the officer, an unlawful act which was the cause of that disarming. [¶] The law has its own particular way of defining 'cause.' A cause of disarming is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the disarming, and without which, the disarming would not occur." The court also cautioned the jury not to place undue emphasis on any single instruction and to consider all the instructions as a whole. The jury again retired to deliberate and, after one additional hour of deliberation, returned verdicts finding defendant guilty as charged on both counts.

The court found the prior serious felony conviction allegation was true. The court sentenced defendant to a term of four years in state prison on count I, representing twice the middle term for that "second strike" offense. The court also imposed a sentence of one year four months, on count II; the court imposed one-third the middle base term of two years, or eight months, and doubled that term for count II as a second strike offense. Thus, the court imposed a concurrent term of one year four months on count II.[4]

Defendant now appeals.

---

[3]The 1959 murder conviction also established defendant's ex-felon status as an element in count II, of being an ex-felon in possession of a firearm. Defendant stipulated at trial that he had suffered a prior felony conviction, so that the jury would not learn that the conviction was for murder, albeit that the conviction was nearly 40 years old at the time of trial. Trial on the truth of the murder prior conviction allegation, for purposes of the three strikes law, was bifurcated from trial on the current substantive offenses.

[4]Defendant acknowledges, and the People concede, that the sentence on count II was improper. The court should have imposed a full middle term of two years, doubled to four years, as a concurrent sentence on count II. The imposition of one-third the middle term for subordinate offenses applies in case of consecutive, but not concurrent, sentences. (Pen. Code, §§ 669, 1170.1.) Here, defendant was sentenced to concurrent terms on the two counts. Remand for resentencing will be required, in any event, in view of our reversal as to count I.

ANALYSIS

*The Evidence Was Insufficient to Support the Conviction of Removing or Taking the Officer's Weapon*

A. *History of the Resisting Arrest Provision*

Penal Code section 148 (hereafter, section 148), as it stood before 1989, provided that "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment." (Former § 148, enacted 1872, as amended by Stats 1987, ch. 257, § 1, p. 1260.) That is, it was a misdemeanor to resist arrest or obstruct an officer in the performance of the officer's duties.[5]

In 1989, the Legislature amended section 148. The resisting arrest/obstructing an officer provision was designated as subdivision (a), and several other subdivisions were added. (Stats. 1989, ch. 1005, § 1, pp. 3495-3496.) Section 148, subdivision (b), provided that "Every person who, during the commission of any offense described in subdivision (a), removes or takes any weapon, other than a firearm, from the person of or immediate presence of a public officer or peace officer is punishable by imprisonment in the county jail not to exceed one year, or in the state prison." (Stats. 1989, ch. 1005, § 1, p. 3495.)

Section 148, subdivision (c), provided that "Every person who, during the commission of any offense described in subdivision (a), removes or takes a firearm from the person of or immediate presence of a public officer or peace officer is guilty of a felony." (Stats. 1989, ch. 1005, § 1, p. 3495.)

Section 148, subdivision (d), provided in part that "Every person who, during the commission of any offense described in subdivision (a), attempts to remove or take a firearm from the person or immediate presence of a public officer or peace officer is guilty of a public offense, punishable by

---

[5]Penal Code section 69 makes it a misdemeanor or felony offense to knowingly resist an officer, in the performance of his or her duty, by force or violence.

imprisonment in a county jail not to exceed one year or in the state prison."[6] (Stats. 1989, ch. 1005, § 1, p. 3495.)

Thus, the amendments (1) continued to treat the offense of mere resisting arrest or obstructing an officer as a misdemeanor; (2) made it a misdemeanor/felony "wobbler" offense for a defendant, while resisting arrest or obstructing an officer, to take or remove any weapon, *other than* a firearm, from the officer; (3) made it a felony, while resisting arrest or obstructing an officer, to take or remove the officer's firearm; and (4) made it a misdemeanor/felony "wobbler" offense to *attempt*, while resisting arrest or obstructing the officer, to take or remove the officer's firearm.

Then, in 1997, the Legislature again amended section 148. The 1997 amendment, in relevant part, amended section 148, subdivision (d), to state that: "Except as provided in subdivision (c) and notwithstanding subdivision (a) of Section 489, every person who removes or takes without intent to permanently deprive, or who attempts to remove or take a firearm from the person of, or immediate presence of, a public officer or peace officer, while the officer is engaged in the performance of his or her lawful duties, shall be punished by imprisonment in a county jail not to exceed one year or in the state prison." (Stats. 1997, ch. 464, § 1.)

The 1997 amendment was intended to indicate that, "when the removal or taking of the firearm does not occur while the person willfully resists,

---

[6]Section 148, subdivision (d), also provided that: "In order to prove a violation of this [attempt] subdivision, the prosecution shall establish that the defendant had the specific intent to remove or take the firearm by demonstrating that any of the following direct, but ineffectual, acts occurred:

"(1) The officer's holster strap was unfastened by the defendant.

"(2) The firearm was partially removed from the officer's holster by the defendant.

"(3) The firearm safety was released by the defendant.

"(4) An independent witness corroborates that the defendant stated that he or she intended to remove the firearm and the defendant actually touched the firearm.

"(5) An independent witness corroborates that the defendant actually had his or her hand on the firearm and tried to take the firearm away from the officer who was holding it.

"(6) The defendant's fingerprint was found on the firearm or holster.

"(7) Physical evidence authenticated by a scientifically verifiable procedure established that the defendant touched the firearm.

"(8) In the course of any struggle, the officer's firearm fell and the defendant attempted to pick it up." (Stats. 1989, ch. 1005, § 1, pp. 3495-3496.)

delays, or obstructs [an officer][7] and is not done with the intent to permanently deprive the officer of the firearm,[8] the person shall be punished by imprisonment in a county jail for a period not to exceed one year or in the state prison for 16 months or 2 or 3 years." (Legis. Counsel's Dig., Sen. Bill No. 57, Stats. 1997, ch. 464.)

The overall effect of the amendments to date (1) continues the offense of resisting arrest or obstructing an officer as a misdemeanor; (2) treats the taking or removing of a weapon from an officer while resisting arrest as a wobbler offense, provided the weapon is not a firearm; (3) treats the taking or removing of a firearm from an officer while resisting arrest or obstructing the officer as a felony; and (4) treats (a) the taking or removing of a weapon, including a firearm, from an officer, but not while resisting arrest, (b) the taking or removing of a weapon without intent to permanently deprive the officer thereof, but not while resisting arrest, and (c) the ineffectual attempt to remove or take a firearm, while resisting arrest, as wobbler offenses.

B. *The Evidence Did Not Show Defendant "Took" or "Removed" Officer Acevedo's Firearm*

▋ Viewing the evidence in the light most favorable to the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; see also *People v. Cuevas* (1995) 12 Cal.4th 252, 263-264 [48 Cal.Rptr.2d 135, 906 P.2d 1290]), we note that, at most, the evidence showed that defendant ran into Deputy Acevedo, and Deputy Acevedo dropped his gun. Deputy Acevedo's hands were full, both literally and figuratively. He had been trying to grab onto defendant's jacket, and he had successively held his flashlight, his pepper spray, and his gun on defendant. Defendant ran at Acevedo and crashed into him, causing Acevedo to drop his gun. We conclude that this evidence was insufficient to establish a violation of section 148, subdivision (c).

A finding of guilt on the evidence here defies common sense. Defendant's conduct did not satisfy the common, ordinary understanding of the words "removing" or "taking." To hold that defendant could be convicted of

---

[7]The added phrase "Except as provided in subdivision (c)," is thus meant to distinguish subdivision (c), which defines the offense of removing or taking a firearm while resisting arrest or obstructing an officer, from a taking or removal of a firearm, but which is not done while resisting arrest or obstructing an officer. (§ 148, subd. (d).)

[8]Subdivision (d) expressly applies "notwithstanding subdivision (a) of Section 489"; Penal Code section 489 provides that stealing a firearm is a felony, not a wobbler, and prescribes a state prison term of sixteen months, two years, or three years. Section 148, subdivision (d), permits wobbler treatment for taking or removing a firearm from an officer if done without intent to permanently deprive the officer thereof.

"removing" or "taking" the gun from Deputy Acevedo, on evidence showing solely that defendant, while trying to evade the officer's grasp, ran into the officer so as to cause him to drop his gun, does not distinguish sufficiently between merely resisting arrest, which is a misdemeanor, and the felony conduct of acting affirmatively to disarm a peace officer while resisting arrest.

Webster's Third New International Dictionary (1993) defines "take" as, among other things, "to get into one's hands or into one's possession, power, or control by force or stratagem: as . . . to seize or capture physically," "to lay or get hold of with arms, hands, or fingers or with a hand or an instrument: GRASP, GRIP," "to catch, seize, or attack through the effect of a sudden force or influence," "to get into one's hand or one's hold or possession by a physical act of simple transference," or "to remove or obtain by removing." (*Id.* at pp. 2329-2330.)

The same work defines "remove" as, "to change or shift the location [or] position . . . of," "to move by lifting, pushing aside, or taking away or off," "to force (one) to leave a place or to go away," or "to get rid of as though by moving . . . ." (Webster's Third New Internat. Dict., *supra*, p. 1921.)

The synonyms for "take" include "SEIZE, GRASP, CLUTCH, SNATCH, GRAB." (Webster's Third New Internat. Dict., *supra*, p. 2331.)

The words "take" and "remove," particularly in the context of a statute concerning disarming an officer in the performance of his or her duties, connote a physical action corresponding to grabbing, holding, seizing, pushing, lifting, picking up, or similar notions.

Section 148, subdivision (d), is instructive. It defines a felony/misdemeanor wobbler offense for *attempting* to take or remove the officer's firearm, and requires proof of one of a number of ineffectual actions which, if completed, would have constituted a taking or removal of the weapon: That is, if a defendant grabs at the gun, tries to pull it out of the holster, unsnaps the holster, picks up the weapon after it has been dropped, and so on, these actions are indicative of a specific intent to gain possession or control of the weapon, away from the officer. Similarly, objectively perceptible evidence may help prove the defendant tried to wrest control or possession of the weapon away from the officer; if, for example, the defendant's fingerprint or DNA is found on the officer's gun, or if a third party witness saw certain movements or actions in which the defendant also touched the weapon, this evidence would support a conviction of attempt to take or remove the gun from the officer. A violation of section 148,

subdivision (d) thus cannot be established unless the defendant has at least tried to touch or hold the gun.

Defendant urges that the felony offense of actually succeeding in taking or removing a gun from an officer, while resisting arrest, also cannot be proven without some evidence of touching or holding the gun.

The Attorney General argues that violation of section 148, subdivision (d), attempting to take or remove the officer's gun, is a specific intent crime, but that a violation of section 148, subdivision (c), taking or removing an officer's gun, is a general intent crime, not requiring proof of any of the facts delineated in section 148, subdivision (d). Thus, no reliance can be placed on, or analogy be drawn from, the kinds of evidence required to prove a violation of section 148, subdivision (d), in determining what kind of evidence will suffice to prove a violation of section 148, subdivision (c).

The California Supreme Court, in another context, correctly pointed out that attempt crimes, even attempts to complete general intent crimes, are defined to include an element of specific intent. ■ "CALJIC No. 6.00 (5th ed. 1988 bound vol.) states: '[¶] An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' As the Attorney General persuasively argues, insofar as relevant here this instruction merely restates the common meaning of 'attempt.' To attempt an act is to 'try' or 'endeavor to do or perform' the act. (Webster's New Internat. Dict. (2d ed. 1958) p. 177.) Defendant could not 'try' to rape Modena Galloway without intending to do so and doing an act toward the rape's commission." (*People* v. *Cain* (1995) 10 Cal.4th 1, 44 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

■ We should not become confused, however, between specific intent, as an element of crime, and the general intent to do a certain act which is a violation of the law: "To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." (CALJIC No. 3.30 (5th ed. 1988 bound vol.) (1992 rev.).)

The crime of rape, for example, is a general intent crime. (*People* v. *Osband* (1996) 13 Cal.4th 622, 685 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *People* v. *Hernandez* (1988) 46 Cal.3d 194, 209 [249 Cal.Rptr. 850, 757 P.2d 1013].) If a defendant intends to do the kind of act which constitutes rape, then the general intent element is met. That is, if the defendant intends to place his penis in the victim's vagina, he has committed the general intent

crime of rape, and does not have to have the "specific intent" to rape. It might be hard to imagine what kind of act a defendant could intend generally to do, which might end up constituting rape, without having the specific intent to commit rape; nevertheless, it is the intent to do the kind of act that results in the vaginal penetration which ultimately proves the intent element of the rape.

 Analogously here, the completed offense of taking or removing the officer's gun, while resisting arrest, is a general intent crime. The intent to do the act of taking or removing is not the same as having the "specific intent" to take or remove the officer's gun, but it is nevertheless hard to imagine how a defendant could intend to do the act of taking or removing the gun without touching or at least striking at the officer's gun.

Here, defendant did nothing with his hands, arms, feet or body that was in any way directed toward the gun or toward obtaining possession or control of the gun. Defendant did not push the gun away, lift the gun, pick it up, unholster it, grab it, seize it, pull it, fire it, use it, manipulate it, or even touch it. Defendant simply ran into Deputy Acevedo; the impact caused the deputy to drop his own gun.

Under these circumstances, in which defendant did nothing to exercise dominion or control over, or even to touch, the gun, the evidence was insufficient for a rational trier of fact to find that defendant "took" or "removed" Deputy Acevedo's weapon. Accordingly, the conviction under section 148, subdivision (c), must be reversed.

Defendant contends, in an argument related to the sufficiency of the evidence argument, that the trial court's instructions to the jury were improperly confusing and incomplete; in particular, defendant complains that the trial court's response to a jury inquiry about the offense under section 148, subdivision (c), may have misled the jury.

Because we have reversed defendant's conviction of the section 148 offense for insufficiency of the evidence, however, we are not required to address this contention.

### DISPOSITION

Defendant's conviction under section 148, subdivision (c), for taking or removing a firearm from a peace officer, while resisting arrest, is reversed for insufficiency of the evidence. Because the conviction is reversed for a failure of proof, defendant may not be retried on that charge. Penal Code

sections 1181 and 1260 authorize this court to modify the judgment when it appears that the evidence and the law do not support conviction of the charged offense, but establish the commission of a lesser included offense, without the necessity of affording a new trial. Here, the evidence and the law overwhelmingly demonstrate defendant's guilt of the lesser included misdemeanor offense of resisting arrest, in violation of Penal Code section 148, subdivision (a). Accordingly, we order the judgment modified to reflect the defendant's conviction for that offense. (See *People* v. *Yonko* (1987) 196 Cal.App.3d 1005, 1010 [242 Cal.Rptr. 269].) Because our disposition affects the sentence, the matter must be remanded for resentencing.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

A petition for a rehearing was denied March 11, 1999.