Filed 6/30/14  P. v. Sexton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONALD L. SEXTON,<br><br>    Defendant and Appellant. | D063743<br><br><br><br>(Super. Ct. No. SCD243610) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Lewis A. Wenzell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Donald L. Sexton was convicted of removing a peace

officer's weapon while resisting arrest. (Pen. Code, § 148, subd. (b); count 3.)[1] On appeal, Sexton contends the trial court failed to properly instruct the jury with respect to the general intent to commit the offense. Sexton also contends the trial court erred in responding to questions from the jury.

We find no error. The jury was provided with an instruction that required the prosecution prove Sexton acted with an intent to commit the crimes with which he was charged. In response to one of the jury's questions, the trial court acted well within its discretion in providing the jury with a dictionary definition of the term "remove." We note that Sexton did not object to the dictionary definition and that it conforms with the manner in which section 148, subdivision (b) has been interpreted in other cases. Finally, the trial court properly declined to respond to the jury's remaining questions because any response would have required the trial court to assume the jury had made certain preliminary findings and thereby indirectly endorse the propriety of those findings.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of September 28, 2012, Dora Tovar was involved in an automobile accident in San Diego. Both police department and fire department personnel responded to the scene of the accident.

While San Diego Police Officer Dudley Ward was talking to Tovar about what had happened, Sexton, who was not involved in the accident and was merely a bystander, approached Ward and Tovar and attempted to speak directly to Tovar. According to

---

1       All further statutory references are to the Penal Code unless otherwise indicated.

Officer Ward, Sexton started yelling at Tovar and her passenger, Melissa Valenzuela, and told them not to get into an ambulance and not to speak with any city officials. Another bystander corroborated Ward's version of Sexton's fairly aggressive interference with Ward's attempt to interview Tovar.

In response to Sexton's interference, Ward told Sexton that Sexton was impairing Ward's ability to perform his duties and that Sexton needed to stop yelling and stand in a certain location. Sexton failed to comply with Ward's direction and became more agitated. Ward then told Sexton he would give Sexton until the count of five to comply or Ward would arrest Sexton. In response to this warning, Sexton wrapped his arms around a nearby pole.

After Sexton wrapped his arms around the pole, Ward told Sexton he was under arrest and instructed Sexton to put his hands behind his back. Again, Sexton failed to comply with Ward's instruction. Ward then tried to remove Sexton from the pole, and Sexton resisted; Ward finally detached Sexton from the pole by placing his arms around Sexton's neck and pulling Sexton to the ground. However, when he was on the ground, Sexton still refused to put his arms behind his back. At that point, Ward yelled for backup.

Officer Sarah Calvert responded to Ward's request for help. Calvert and Ward attempted to turn Sexton over on his stomach, but Sexton resisted. Ward then pulled out his Taser weapon, placed it against Sexton's skin and delivered a shock to Sexton. Sexton screamed, reached back with his left hand and grabbed the barrel of the Taser

3

weapon. At that point, Ward saw Sexton's finger inside the trigger guard of the weapon. Although Ward kept his hand on the grip of the weapon, Sexton was able to turn the weapon towards Calvert, who then received a shock.

After being shocked, Calvert yelled and told Ward to stop shocking Sexton. Ward then lifted up his hands to show Calvert he did not have control of the weapon. Calvert saw Sexton with his hands on the barrel of the weapon and his finger in the trigger guard. Although neither Ward nor Calvert saw Sexton pull the trigger on the Taser weapon, Ward then received a shock. Calvert then struck Sexton's forearm with her knee, and Sexton released the weapon.

Sexton was finally handcuffed and placed in a police car.

Sexton was charged with two counts of assault on a peace office with a stun gun or less lethal weapon. (§ 244.5, subd. (c).) He was also charged with one count of removing or taking an officer's weapon while resisting arrest. (§ 148, subd. (b).) At trial, Ward, Calvert, and a fire chief who was at the scene of the accident testified as to what transpired, and Ward and Calvert, in particular, testified that Sexton grabbed the barrel of the Taser weapon while they were trying to handcuff him and that they both received shocks from the weapon. Sexton testified he never put his hands on the weapon.

The jury found Sexton not guilty on both counts of assaulting a police officer. However, as we have indicated, the jury convicted Sexton of one count of removing or taking a weapon from an officer in the course of resisting arrest. (§ 148, subd. (b).) The trial court sentenced Sexton to three years of probation on various terms and conditions.

4

I

The trial court instructed the jury with a version of CALCRIM No. 250, which stated: "The crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crimes in this case, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he intentionally does a prohibited act; however, it is not required that he intend to break the law. The act required is explained in the instruction for that crime." The trial court further instructed the jury with a version of CALCRIM No. 2653, which stated, in pertinent part: "The defendant is charged in Count Three with taking a weapon from a peace officer while resisting, obstructing, or delaying the officer in performing or attempting to perform his or her duties in violation of Penal Code section 148. [¶] To prove that the defendant is guilty of this crime, the People must prove that:

"1. Dudley Ward was a peace officer lawfully performing or attempting to perform his duties as a peace officer;

"2. The defendant willfully resisted, obstructed, or delayed Dudley Ward in the performance of or attempt to perform those duties;

"3. When the defendant acted, he knew, or reasonably should have known, that Dudley Ward was a peace officer performing or attempting to perform his duties;

"AND

"4. While the defendant resisted, obstructed, or delayed Dudley Ward, the defendant took or removed a weapon from Dudley Ward's person or immediate presence.

"Someone commits an act *willfully* when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage."

At trial, Sexton did not ask for any clarifying or amplifying elaboration on these instructions.

Although CALCRIM No. 250 instructed the jury that a finding of guilt required proof both that Sexton committed a proscribed act and that he intended to commit the act, on appeal Sexton contends that CALCRIM No. 2653, as given, was defective because it did not repeat the requirement that there be proof he intended to take or remove Ward's weapon. We reject this contention.

As the Attorney General points out, "'[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal.'" (*People v. Whalen* (2013) 56 Cal.4th 1, 81-82.) Because both CALCRIM No. 250 and CALCRIM No. 2653 are accurate statements of the law and Sexton made no request for a more detailed instruction on intent, he forfeited the issue on appeal. (*People v. Whalen*, *supra*, at pp. 81-82.)

Moreover, notwithstanding Sexton's failure to properly preserve the issue, on this record the instructions provided by the trial court were entirely adequate. "As we said in *People v. Castillo* (1997) 16 Cal.4th 1009, 1016, '"[T]he correctness of jury instructions

6

is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" (Quoting *People v. Burgener* (1986) 41 Cal.3d 505, 538; *id.* at p. 539 ['"The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole."']; see also *People v. Chavez* (1985) 39 Cal.3d 823, 830 ['We must look to the entire charge, rather than merely one part, to determine whether error occurred.']; *People v. Noguera* (1992) 4 Cal.4th 599, 630-631.)" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.)

Here, considered as a whole, the instructions provided by the trial court expressly required the prosecution to prove both that Sexton took or removed the weapon from Ward and that he did so intentionally. We also note that, in her argument, the prosecutor expressly advised the jury that it was required to find that Sexton "intended to take Officer Ward's Taser, maybe to not get tased again, maybe to just get it away from him. And in that intentional move, he willfully started moving that Taser around and shocking officers." Because the jury was fully advised that the prosecution had to prove that Sexton acted intentionally, the trial court's instructions are not subject to attack on appeal. (*People v. Musselwhite*, *supra*, 17 Cal.4th at p. 1248.)

II

A. Jury Questions

During their deliberations, the jury sent the trial court two notes.[2] The first note concerned a discrepancy between CALCRIM No. 2653 and the verdict form the jury was

___

[2] Prior to their deliberations and during presentation of the evidence, the jury also asked to see what a Taser weapon looks like.

7

given. CALCRIM No. 2653 stated that Sexton was guilty of violating section 148 if he took *or* removed Ward's weapon; the verdict form required a finding that Sexton took *and* removed Ward's weapon. Without objection from either party, the trial court instructed the jury that CACLCRIM No. 2653 was controlling and that Sexton was charged with having taken *or* removed the weapon.

The jury's second note contained three questions:

"1. What is the definition of removed?

"2. What if Ward lost control due to Sexton[']s . . . hand on the [T]azer? Is that guilty of charge #3 p #4[?] Is that 'removed' the weapon?

"3. If, while resisting, Sexton's actions resulted in separation of [T]aser from Ward, but without the intent of removing it from Ward, would this lead to a conviction?"

In response to the jury's request for a definition of "removed," the trial court proposed providing the jury with a dictionary definition of the word, to wit: "Remove means 'to change or shift the position of something' ' to move by lifting, pushing aside or taking away or off[.]' Please evaluate Count 3 in the context of this definition."

With respect to the jury's remaining two questions, the trial court proposed the following response: "I cannot answer Questions 2 and 3 because I do not know how the jury has resolved many other factual findings necessary for a conviction on Count 3."

Neither the prosecutor nor Sexton's counsel objected to the trial court's proposed responses, and the responses were given to the jury. After receiving the responses, the jury deliberated for another hour and 47 minutes. It then returned its verdict of not guilty

on the assault charges and guilty on the taking or removing count.

On appeal, Sexton argues the trial court erred in giving the jury a dictionary definition of "remove" that did not require proof that he obtained control over the weapon and in declining to provide a response to the jury's two remaining questions.

B. Failure to Object

Once again, Sexton's contentions are barred by the fact he raised no objections to the trial court's proposed responses to the jury's questions. (See *People v. Roldan* (2005) 35 Cal.4th 646, 729; *People v. Boyette* (2002) 29 Cal.4th 381, 431.) The bar on raising such issues for the first time on appeal is particularly appropriate with respect to the trial court's determination that it could not answer the jury's last two questions. Counsel's acquiescence in the trial court's response to those questions was quite likely a tactical decision on counsel's part. Those questions clearly suggested disagreement among the jurors about whether in fact Sexton intended to take or remove Ward's weapon and, plainly, any clarifying instruction might have reduced the likelihood of a hung jury. In this context, permitting Sexton to challenge a response his counsel tacitly agreed to would give him a forbidden "second bite at the apple." (*People v. Roldan*, *supra*, at p. 730.) In any event, the trial court's responses were not erroneous.

C. Definition of "Remove"

Where, as here, it appears a statute uses a word as it is commonly understood, "'a court typically looks to dictionaries.'" (*People v. Whitlock* (2003) 113 Cal.App.4th 456, 462.) There is nothing on the face of section 148 or the conduct it governs which

suggests that, in using "remove," the Legislature intended it to have any special or limited meaning. Thus, the trial court could properly rely on the dictionary definition of "remove." (*People v. Whitlock*, *supra*, at p. 462.)

Contrary to Sexton's argument, there is nothing which suggests the statute requires that an accused obtain control over a weapon. Rather, as Sexton himself concedes, the scope of the statute includes instances where a defendant has disarmed an officer by pushing or striking a weapon so that it is no longer in the officer's control. The requirement of the statute is that there be proof the accused *intended* to disarm the officer, either by taking control of the weapon or by simply depriving the officer of his or her control of the weapon. (See *People v. Matthews* (1999) 70 Cal.App.4th 164, 175 [no crime where defendant did not "push the gun away, lift the gun, pick it up, unholster it, grab it, seize it, pull it, fire it, use it, manipulate it, or . . . touch it"].)

In sum, the trial court did not err in providing the jury with the dictionary definition of the term "remove."

D. Declining to Answer Jury Questions

In general, the trial court's response to jury questions is governed by section 1138, which provides in pertinent part: "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given . . . ." "'This means the trial "court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] *This does not mean the*

10

*court must always elaborate on the standard instructions. Where the original*

*instructions are themselves full and complete, the court has discretion under section 1138*

*to determine what additional explanations are sufficient to satisfy the jury's request for*

*information. . . . Indeed, comments diverging from the standard are often risky.*

[Citation.]" [Citation.]'" (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1179, italics

added (*Montero*).)

In *Montero*, the defendant was discovered by peace officers who were conducting

a parole search in the garage of a residence that did not belong to the defendant. The

officers found methamphetamine in the defendant's pockets and a "pay/owe" sheet in his

wallet. In addition, the officers found bags of methamphetamine and other drug

paraphernalia, including two scales, in the back of the garage where defendant was first

observed. The condition of the bags and the amounts in them suggested they had been

prepared for sale.

The defendant was charged with possession for sale of methamphetamine. During

the jury's deliberation, the jury sent the trial court the following questions: "'Clarification

on possession: [¶] We have read the last two paragraphs of [CALCRIM No. 2302] and

still need clarification:

"'How do we evaluate the idea of "control"? Is it enough that [defendant] was in

the same room as excessive amounts of drugs, scales ect [*sic*] that are in plain precence

[*sic*] or tucked-away; is it enough to say that he was indeed in "control" and in possession

of these items?'" (*Montero*, *supra*, 155 Cal.App.4th at p. 1178.)

11

The court responded: "'In response to your question, "How do we evaluate the idea of 'control?'": It is for the jury to decide.

"'In response to your question, "Is it enough that [defendant] was in the same room as excessive amounts of drugs, scales ect [*sic*] that are in plain precence [*sic*] or tucked-away; is it enough to say that he was indeed in 'control' and in possession of these items?": It is also for the jury to decide.

"'Please reread instruction # 2302 [CALCRIM No. 2302] in this regard.'" (*Montero*, *supra*, 155 Cal.App.4th at p. 1178.)

After the trial was concluded, the trial court made a statement explaining its unwillingness, in its response to the jury's questions, to elaborate on the instructions it had provided the jury. The trial court "'did not read this request for clarification as a request to clarify a jury instruction, but rather, a request as to how they should deliberate or how they should go about their deliberations.

"The court believed that with these questions, 'the jury was disclosing their internal deliberations, which they shouldn't do anyway, but especially the second part of that where they gave a fact pattern and asked if that was enough. So it appeared to me that this question was inappropriately asking the Court to assist them in their substantive deliberations and, again, was not a request for a clarification of the instruction on possession.'" (*Montero*, *supra*, 155 Cal.App.4th at pp. 1178-1179.)

On appeal, the court in *Montero* approved the trial court's response: "We agree with the trial court that any detailed response to the question would have thrust the court

12

into the jury's role of deliberating whether defendant had controlled the substances. 'When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination.' [Citation]." (*Montero*, *supra*, 155 Cal.App.4th at p. 1180.)

The trial court here faced a dilemma quite similar to the one considered in *Montero*. As we have indicated, the jury's questions here suggested there was some division within the jury as to whether Sexton intended to take or remove Ward's weapon and, as the trial court here indicated in its response, any answer it gave would assume and thereby endorse a finding of guilt with respect to the other elements of the offense. Moreover, in providing the trial court with two fact patterns and inquiring whether Sexton would be guilty under those fact patterns, the jury's questions suffered from the same vice the court identified in *Montero*: the questions essentially asked the trial court to resolve the issue of whether Sexton intended to take or remove Ward's weapon. The trial court did not err in declining to interfere in the jury's resolution of that question.

Contrary to Sexton's alternative argument, his counsel was not ineffective in failing to object to the trial court's proposed responses and in failing to offer any alternatives. As we have noted, given the difficulty the jury was having with respect to whether Sexton intended to take or remove Ward's weapon, counsel plainly made a tactical decision that, without further elaboration with respect to the definition of remove or in response to the fact patterns, there was a greater likelihood the jury would be unable

13

to reach a verdict.  (See *People v. Stanley* (2006) 39 Cal.4th 913, 954.)

## DISPOSITION

The judgment of conviction is affirmed.


BENKE, Acting P. J.

WE CONCUR:


NARES, J.


McDONALD, J.