Filed 2/22/23  P. v. Allen CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DAMION ALLEN,<br><br>        Defendant and Appellant. | B317629<br><br>(Los Angeles County<br>Super. Ct. No. MA080966) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Manuel Almada, Judge.  Reversed and remanded.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following his conviction for assault with a firearm and associated enhancements, the trial court sentenced defendant and appellant Damion Allen in January 2022, shortly after amendments to the Determinate Sentencing Law went into effect.  Although the parties and the trial court were aware of the revised law, defendant's sentence was not in accordance with the amendments.  We cannot conclude the error was harmless, and we therefore reverse for resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.      Defendant's Crime**

Defendant shot his stepfather, Ramon Bond, in the leg.  Bond, the only trial witness to the facts, testified as follows:  On January 12, 2021, Bond was home where he lived with his wife.  Defendant came over to visit; he wanted to wash his car and asked to use Bond's power washer.  Defendant had trouble setting up the power washer, and Bond went to help him.  According to Bond, "We got into an argument about it.  Next thing I know we – we got into it.  Words were said.  I grabbed him.  He grabbed me.  I took him down to the ground.  From there, he asked me to let him up.  I let him up.  I was about to go back in the house.  He went to the car, got a gun and shot me in the leg."  The bullet broke Bond's femur; the pain was excruciating.

Bond testified that although he laid hands on defendant first, he did so because defendant "brought his fist up, and I thought he was going to come at me and hit me."  Bond was "bigger than" defendant, and he got the better of defendant in the scuffle.

Whether Bond was facing defendant or facing away toward the house when he was shot was disputed.  Although Bond had

initially told the investigating sheriff's deputy that he had not seen the gun, he testified that, in fact, he had seen it. He explained that, although he had turned to go back inside, when he heard the car door open, he turned back around to face defendant. The physical evidence is in accord; the bullet entered the front part of Bond's thigh, "maybe halfway between the front and the left."

## 2. *Charges*

Defendant was charged with assault with a firearm (Pen. Code, § 245, subd. (a)(2)).[1] Enhancements for personal use of a firearm (§ 12022.5, subd. (a)) and causing great bodily injury (§ 12022.7, subd. (a)) were also alleged.

## 3. *Bond's Reluctance to Appear*

Trial was delayed in part because Bond was reluctant to testify. At a hearing on July 19, 2021, the prosecutor announced she was not ready for trial because Bond, although personally served, was not present. The prosecutor explained to the trial court that a jail phone call revealed that defendant had asked his mother to tell Bond not to come to court.[2] The prosecutor thought "there is dissuading going on" and needed more time to make sure Bond would appear and also to determine whether to file additional charges against defendant "and possibly his mother." Defendant was never charged with dissuading.[3]

---

[1]     All further statutory references are to the Penal Code.

[2]     Bond testified that, at the time of trial, Bond and defendant's mother were going through a divorce.

[3]     The record is unclear whether charges were brought against defendant's mother.

### 4. *The Trial*

Bond ultimately appeared at trial and testified to the circumstances of the shooting. The prosecution was permitted to play the jail call at trial, as evidence of defendant's consciousness of guilt. Defendant had made a number of telephone calls to his mother under his own booking number. Defendant made the call in question, however, using a different booking number. A sheriff's deputy testified that the voices on this call belonged to defendant and his mother, as they were identical to the two voices on the calls defendant had made to his mother from his own booking number. In this call, defendant said, "You gotta keep your husband from coming to court," and his mother responded, "He ain't going to court. He told you that?" Later, his mother said, "He wasn't coming to court anyway. He told the [DA] he was going to be out of town." Defendant asked if Bond was out of town right then; his mother replied that he was. She explained that "they been coming to the house and all of that, and he ain't been answering." Defendant responded, "That's good." His mother said, "I got this." Defendant agreed, "You got this. That's why you're the big dog. I'm just a pup."

Trial proceeded, and on November 24, 2021, the jury found defendant guilty of assault with a firearm. Both enhancements (personal use of a firearm and great bodily injury) were found true.

The court set the matter for sentencing.

### 5. *The Parties' Sentencing Memoranda*

On January 4, 2022, defendant filed his sentencing memorandum. Because the 2021 amendments to the sentencing law had just gone into effect, defendant's memo discussed the

effect of those amendments.  Specifically, defendant addressed three provisions of the new law:

(1) **Midterm Sentencing.**  Section 1170, subdivision (b)(1) now provides for a presumption of the middle term in a sentencing triad, and subdivision (b)(2) provides that the court may exceed the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[4]  Subdivision (b)(3) provides, however, that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

(2) **Low-term Sentencing**.  Section 1170, subdivision (b)(6) itemizes certain circumstances in which the court shall impose the lower term, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice."  One such circumstance is if the defendant was a youth, defined as being under the age of 26, at the time of the offense, if the defendant's youth "was a contributing factor in the commission of the offense."

---

[4]  Section 1170.1, subdivisions (d)(1) and (d)(2) similarly provide for the presumptive middle term for enhancements, which may only be overcome by aggravating circumstances stipulated to be true or found true beyond a reasonable doubt.

(3) **Enhancements.** Section 1385 now includes language directing the dismissal of enhancements if in the furtherance of justice, and itemizes circumstances a court should consider in exercising its discretion to dismiss. These include: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).)[5]

Armed with these statutory amendments, defendant argued for a lower or middle term sentence. Representing that defendant "had just turned 20 a few days before the offense," counsel argued that defendant was entitled to the presumptive low term. But should the court find the presumptive low term did not apply, defendant asserted the presumptive middle term surely did.

Counsel acknowledged there were circumstances in aggravation the court could find true. He admitted the offense was "violent and callous," but argued that if the court chose to impose sentence on the great bodily injury enhancement, it could not then consider the infliction of bodily injury as an aggravating

---

[5]     The parties disagree as to the meaning of the quoted language. Defendant reads this language standing alone, as a mandate that, in all cases, all enhancements beyond a single enhancement must be dismissed. The Attorney General responds that, in context, multiple enhancements are simply a circumstance the court shall consider in exercising its discretion whether to strike enhancements, and, in the proper case, courts still retain discretion to sentence on multiple enhancements. (See *People v. Anderson* (2023) __ Cal.App.5th __ [2023 WL 1790118].) We need not resolve this dispute. Defendant was sentenced on only one enhancement and, in any event, we are remanding for resentencing.

6

factor. (§ 1170, subd. (b)(5) [court cannot impose the upper term "by using the fact of any enhancement upon which sentence is imposed"].) Counsel also admitted defendant had prior sustained juvenile convictions "that are numerous or of increasing seriousness," and that he was on probation on two cases at the time he committed this offense.[6]

Defendant argued there were also circumstances in mitigation, specifically that Bond was the first to use physical force, and Bond was larger and stronger than defendant. Counsel argued that this constituted physical provocation. (Cal. Rules of Court, rule 4.423(a)(2) [victim was instigator or provoker is a mitigating circumstance].)[7] As to rule 4.423(b), which identifies mitigating circumstances specifically related to the defendant, counsel conceded that none of them applied, but again argued defendant's age should result in the presumptive low term. Counsel also added, "Mr. Bond was Defendant's stepfather, and Defendant's mother can attest to the fact that Defendant was repeatedly physically and verbally abused by Mr. Bond."

---

[6] Counsel told the court, "Defendant was on two grants of felony probation at the time of the offense (one from June 2019, and the other from February 2020), though there is no evidence that he had violated the terms of his probation until the commission of the instant offense in January 2021." This is not wholly accurate – the offense underlying the February 2020 grant of probation appears to be based on a violation of the June 2019 grant of probation.

[7] All further rule references are to the California Rules of Court.

7

As to the enhancements, defendant argued that, under section 1385 as amended, the court should impose only one. He asked the court to dismiss the firearm enhancement, but, if the court instead chose to dismiss the great bodily injury enhancement, defense counsel sought the lower or middle term on the firearm enhancement.

In its sentencing memorandum, the prosecution did not seek a particular sentence, but argued in favor of finding additional aggravating circumstances, including: the use of a firearm (rule 4.421(a)(2)); and defendant's attempt to dissuade Bond from testifying (rule 4.421(a)(6)).

**6.** ***Sentencing Hearing and Sentence***

Our record of the court's expression of reasons for its findings at the sentencing hearing is somewhat unclear.[8] It appears that the court made its own findings of fact regarding aggravating circumstances, beyond those facts either stipulated to, found true by the jury beyond a reasonable doubt, or related to defendant's prior criminal record.

---

[8] According to the reporter's transcript, the trial court stated, "The court, as I indicated previously, has gone through both the statutes at play here, case law, as well as the circumstances in mitigation and aggravation in rendering a judgment here today in sentencing. The court does find that while the probation officer's report may be considered in its entirety, the weight to which this court will give any specific information that may or may not be, depending on the level of credibility to this court, nor does the court have substantial evidence presented during this trial, and based on the probation officer's record and the People's statement, as well as the defense's statement, sentencing briefs or memoradums, to find the following: [findings follow]." The lack of clarity may be attributable to an error in transcription.

The court found the following factors in aggravation to be true:  (1) the crime involved great violence; defendant's acts disclosed a high degree of viciousness or callousness (rule 4.421(a)(1)); (2) the victim was particularly vulnerable, because at the time he was shot, Bond was walking back into the garage (rule 4.421(a)(3)); (3) defendant attempted to dissuade Bond from testifying (rule 4.421(a)(6)); (4) defendant's prior offenses show violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); (5) defendant's prior convictions are of increasing seriousness (rule 4.421(b)(3)); (6) defendant was on probation at the time (rule 4.421(b)(4)); and (7) defendant's prior performance on probation was unsatisfactory (rule 4.421(b)(5)).

As to factors in mitigation, the court accepted defendant's argument that Bond had provoked the incident, and the court found it to be the sole mitigating circumstance established in this case.

The court concluded the mitigating circumstance was greatly outweighed by the circumstances in aggravation:  "The court does find that aggravating circumstances as outlined here not only outweigh the mitigating circumstances, but do so by a substantial degree . . . ."  The court stated that imposition of the lower term would be contrary to the interests of justice.  "And for the reasons noted," the court selected the upper base term of four years.  After again stating that it was weighing all facts and circumstances, the court imposed the upper term of 10 years on the firearm enhancement.  The court believed it would not be in the interests of justice to dismiss the great bodily injury

9

enhancement, but chose to stay the punishment on it, as 14 years constituted "an appropriate sentence."[9]

Defendant filed a timely notice of appeal.

## *DISCUSSION*

On appeal, defendant argues the trial court erred by imposing the high term, on both the offense and the firearm enhancement, in partial reliance on aggravating factors not stipulated to by defendant or found true beyond a reasonable doubt.[10]  The Attorney General agrees there was error, but argues that it is harmless.

**1.     *There Was Sentencing Error***

The court imposed a high term sentence on both the offense and the firearm enhancement by balancing seven aggravating factors against a single factor in mitigation.  The seven aggravating factors included four factors related to the defendant's prior convictions and three that were not.

---

[9]     The court also imposed 1/3 the middle term, or 8 months, as a concurrent term for each of defendant's probation violations. Defendant concedes that this was erroneous; a concurrent sentence must be full-term.  We agree. (*People v. Matthews* (1999) 70 Cal.App.4th 164, 169, fn. 4.) Because we remand for re-sentencing the trial court will have the opportunity to correct this error.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 [full resentencing on remand].)

[10]     Defendant also argues the trial court erred by not properly considering the presumptive low term due to his age, and in staying, rather than dismissing, the great bodily injury enhancement.  As we remand for resentencing, we need not address these issues.

10

The four factors related to defendant's prior convictions, were:  (1) defendant's prior offenses show violent conduct that indicates a serious danger to society; (2) defendant's prior convictions are of increasing seriousness; (3) defendant was on probation when he committed the current offense; and (4) defendant's prior performance on probation was unsatisfactory.  Defendant does not argue the court erred in considering these factors.

We turn to the three factors unrelated to defendants' prior convictions.[11]  We briefly discuss each one:

　　1.　　The crime involved "great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."  (Rule 4.421(a)(1).)  Here, by finding the great bodily injury enhancement true, the jury found this aggravating circumstance true.  While defendant cautions against double counting (§ 1170, subd. (b)(5)), the court imposed no sentence on the great bodily injury enhancement, so the court was free to use this aggravating circumstance.

---

[11]　　Defendant claims the trial court relied on five, not three, factors that were not related to prior convictions.  Specifically: (1) the crime involved great violence; (2) the crime involved a high degree of viciousness or callousness; (3) the victim suffered serious injury; (4) the victim was particularly vulnerable; and (5) defendant attempted to dissuade a witness.  Under rule 4.421(a)(1), the first three factors defendant identifies are actually a single factor – "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" is a single aggravating circumstance.  By our count, there were only three aggravating circumstances not related to prior convictions, not five.

2.     The victim was particularly vulnerable.  (Rule 4.421(a)(3).)  The jury did not find the victim was particularly vulnerable.  The court made this finding, based on its conclusion Bond's back was turned when he was shot, a fact that was disputed at trial.

3.     Defendant attempted to dissuade Bond from testifying.  (Rule 4.421(a)(6).)  The jury likewise did not make this finding.  While the prosecutor at one point indicated she was contemplating adding this charge, she ultimately did not.

Neither of the latter two factors in aggravation was based on facts found true by the finder of fact beyond a reasonable doubt or subject to stipulation, and it was therefore error for the trial court to rely on them.  The trial court was, thus, entitled to consider only infliction of great bodily injury, and the four factors related to defendant's prior convictions.

Having found error, we turn to the heart of the case: whether the error is harmless.

**2.**     ***The Error Was Prejudicial***

In their briefs on appeal, defendant and the Attorney General initially disputed the standard of review for the error of a sentencing court imposing an upper term sentence in partial reliance on an aggravating circumstance not found true by the jury.  (Compare *People v. Lopez* (2022) 78 Cal.App.5th 459, 465-466 [harmless only if appellate court concludes a jury would have found true beyond a reasonable doubt every factor on which the court relied] with *People v. Flores* (2022) 75 Cal.App.5th 495, ___ [294 Cal.Rptr.3d 725, 729] [harmless as long as appellate court concludes the jury would have found at least a single aggravating circumstance true beyond a reasonable doubt].)

12

While the appeal was pending, newer authorities have suggested a hybrid standard of review which the parties agree is applicable.  Under this standard, there are two inquiries.  First, in order to satisfy federal constitutional requirements, the reviewing court must conclude beyond a reasonable doubt that the jury, also applying the beyond a reasonable doubt standard, unquestionably would have found true at least a single aggravating circumstance.  (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112 (*Zabelle*); see also *People v. Dunn* (2022) 81 Cal.App.5th 394, 401 (*Dunn*), review granted Oct. 12, 2022, S275655.  See *People v. Sandoval* (2007) 41 Cal.4th 825, 839.)  Second, the court must determine, under the state-law *Watson* standard (*People v. Watson* (1956) 46 Cal.2d 818, 836), whether the court *would* have imposed the upper term regardless of the error.  This involves a two-step examination.  "In particular, we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error.  [Citation.]  Resolving this issue entails two layers of review.  We must first, for each aggravating fact, consider whether it is reasonably probable that the *jury* would have found the fact not true.  We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the *trial court* would have chosen a lesser sentence had it considered only those aggravating facts."  (*Zabelle, supra,* at p. 1112 [italics added]; see also *Dunn, supra,* at p. 401.)

There is no dispute that the first – federal constitutional – prong of the standard has been met.  Defendant concedes, as he must, that at least one aggravating circumstance would have been found true beyond a reasonable doubt by the jury.  By

finding the great bodily injury enhancement true, the jury found that aggravating circumstance had been established beyond a reasonable doubt.  (Rule 4.421(a)(1) ["crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"].)

　　We therefore turn to the second prong, state law analysis. One of the factors on which the trial court relied was that the victim, Bond, was particularly vulnerable because his back was turned when he was shot.  This aggravating circumstance requires a finding of *particular* vulnerability.  " 'Particularly . . . means in a special or unusual degree, to an extent greater than in other cases.  Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act.' " (*People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1007.)  We conclude it is reasonably probable a jury would have found this circumstance untrue for two reasons.  First, the facts were disputed.  Bond was shot in the front on the leg, and he testified that he had turned to look at defendant when he heard the car door open.  Second, whether Bond was *particularly* vulnerable is a comparative standard; it would require a degree of speculation as to whether the jury – even if it found Bond's back was turned – would have concluded that circumstance rendered him more vulnerable than other assault victims.  (See *People v. Wandrey* (2022) 80 Cal.App.5th 962, 983, review granted Sept. 28. 2022, S275942 [finding harmless error in the court's reliance on particular vulnerability would require some degree of speculation, given the quantitative standard]; see also *Butler v. Curry* (9th Cir. 2008) 528 F.3d 624, 649-650 [expressing grave doubts that a jury would have found a

14

domestic violence victim particularly vulnerable simply because her back was turned].)

We turn to the next aggravating circumstance – victim dissuasion – and conclude it is not reasonably probable a jury would have found it not true. It is apparent defendant placed the call; the call was placed to his mother; the voice of the call sounded like defendant; and defendant's mother referred to the caller as "son." ~(Ex 4A, p. 5)~ In the call, defendant told his mother, "You gotta keep your husband from coming to court." Defendant later repeated that the prosecution was going to send his stepfather "a check, a victim of crime check. That's the bait to get him into the, um, to get him to come to court. You can take the check, cash it do whatever, but tell him do not come to court." ~(Ex 4A, p. 3)~ On these facts, no reasonable jury would have concluded defendant did not attempt to dissuade his stepfather.

It is then our task to determine whether, in the absence of the victim vulnerability aggravating circumstance, it is reasonably probable that the trial court would have imposed a lesser sentence. There is, however, an additional wrinkle: Following the sentencing in this case, rule 4.423 was amended (effective March 14, 2022) to expand the mitigating circumstances. Specifically, subdivision (b), which identifies "factors relating to the defendant," was expanded from 6 factors to 15. One of the new factors is that the defendant was under 26 at the time of the commission of the offense. (Rule 4.423(b)(6).) Another newly added mitigating factor is that the defendant "experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the

15

crime."[12] (Rule 4.423(b)(3).) We asked the parties to brief the effect of this amendment on defendant's appeal. Defendant argued that the new factors should be considered. The prosecution did not expressly take a position on whether the amended rule should apply to cases pending on appeal, but simply argued that remand is unnecessary because the trial court already considered and rejected any mitigating effect of defendant's age and Bond's alleged abusiveness.

The prosecution's argument is unpersuasive. It is true that the trial court rejected the presumptive low term with the knowledge that defendant was 20 years old at the time of the offense. But the court did not consider youth as a mitigating circumstance in the sentencing calculus for determining whether to impose the high- or mid-term, even though there was no dispute as to defendant's age. Defendant also argued in his sentencing memorandum that the trial court should take into account defendant's claim that Bond had previously physically and psychologically abused defendant. These factors at the time of sentencing had not been itemized in the applicable rule of court. The trial court did not consider whether or not those mitigating factors applied to defendant.

In short, the trial court here balanced seven aggravating circumstances against a single mitigating circumstance, and

---

[12] Rule 4.423, as amended, also includes as mitigating factors some of the factors added to section 1385, subdivision (b) as circumstances the trial court should consider in determining whether to dismiss an enhancement, including that multiple enhancements are alleged, and that application of an enhancement could result in a discriminatory racial impact. The first occurred in this case; the second was alluded to in defendant's opening brief.

16

concluded the high term was appropriate for both the offense and the enhancement.  But, under the current law, the court should not have relied on two of those aggravating circumstances (particular vulnerability/dissuading a witness), although the error in relying on one was harmless, and the court should have considered at least one more mitigating circumstance (defendant's youth), and possibly several others.  Under these circumstances, we conclude it is reasonably probable the court would have imposed a lesser sentence but for the errors we have found.

### *DISPOSITION*

The judgment is reversed and the matter remanded for resentencing.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.

17